**JUNE 19, 2008**
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

RECEIVED
May 20. 2008
MAY 2 0 2008 MB

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

United States of America ex rel.

~~Clarence Charles Trotter~~ A63323
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

~~Terry L. McCann~~
(Warden, Superintendent, or authorized
person having custody of petitioner)

RESPONDENT, and

(Fill in the following blank **only** if judgment
attacked imposes a sentence to commence
in the future)

ATTORNEY GENERAL OF THE STATE OF

~~Illinois~~
(State where judgment entered)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

08CV2917
C/

**JUDGE KENNELLY**

**MAG.JUDGE KEYS**

Case Number of State Court Conviction:

I86CR10969

## PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Cook County Circuit Court 26 So.

   California Ave, Chicago Illinois 60608

2. Date of judgment of conviction: July 18, 1994

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

   Murder, Aggravated Kidnap and Residential Burglary

4. Sentence(s) imposed: ~~Natural Life, 15 years each count Kidnap/burglary~~

5. What was your plea?  (Check one)      (A) Not guilty      ( X )
                                          (B) Guilty          (  )
                                          (C) Nolo contendere (  )

   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

   N/A

## PART I -- TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):        Jury ( )        Judge only ( x )

2. Did you testify at trial?   YES ( )          NO      ( X )

3. Did you appeal from the conviction or the sentence imposed? YES ( X )  NO ( )

   (A) If you appealed, give the

       (1) Name of court: Appellate Court Illinois First District

       (2) Result: Affirmed/Limoited remand post-trial motion.

       (3) Date of ruling: December 31, 1996 (1-95-0477)

       (4) Issues raised: Speedy Trial Act Violated;Failed to prove guilty beyond
           reasonable doubt;Trial court err barring admission codefendant's
           post-arrest confession;Trial Court err denial pro se post-trial
           motion and court must vacate one of two murder counts where one
           person killed.

   (B) If you did not appeal, explain briefly why not:

       _____ N/A _____

4. Did you appeal, or seek leave to appeal, to the highest state court?   YES ( X )      NO ( )

   (A) If yes, give the

       (1) Result   PLA Denied April 2, 1997

       (2) Date of ruling:  April 2, 1997

       (3) Issues raised: Speedy Trial right improperly denied and affirmed on
           appeal. Appellate Counsel failed to appeal other issues raised
           appellate court.

   (B) If no, why not: _____ N/A _____

5. Did you petition the United States Supreme Court for a writ of *certiorari*?   Yes ( x )   No ( )

   If yes, give (A) date of petition: May 2, 1997  (B) date *certiorari* was denied: June 9, 1997

2

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES ( X )  NO ( )

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

A.  Name of court: Cook County Circuit Court

B.  Date of filing: July 22,1997/June 13, 2001

C.  Issues raised: Egregious Official Misconduct of Police and Prosecutors; Egregious Officoial Misconduct by interference constitutional and court proceedings; denial of transcripts; denial of transcripts; Denial fair trialdue to false testimony knowingly presented Perjured testimony and withholding contradicted requested evidence; Unauthorized Sentence;Speedy Trial Violation; Official Misconduct at Grand jury; Ineffective assistance Trial counc; Ineffective assistance appellate counsel; Double Jeapardy;

D.  Did you receive an evidentiary hearing on your petition?    YES ( )  NO ( X )

E.  What was the court's ruling? Petition untimely, res judicata, waiver.

F.  Date of court's ruling: March 9, 2004

G.  Did you appeal from the ruling on your petition?    YES ( X )  NO ( )

H.  (a) If yes,    (1) what was the result?    Affirmed trial court

               (2) date of decision:    December 20, 2006

    (b) If no, explain briefly why not:    N/A

I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

YES ( X )  NO ( )

    (a) If yes,    (1) what was the result?    PLA Denied

               (2) date of decision:

    (b) If no, explain briefly why not:    N/A

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES ( X )        NO ( )

    A.  If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.  Nature of proceeding       State Habeas Corpus

        2.  Date petition filed       June 9, 2000

        3.  Ruling on the petition       Unknown

        3.  Date of ruling       N/A

        4.  If you appealed, what was     N/A
            the ruling on appeal?

        5.  Date of ruling on appeal      N/A

        6.  If there was a further appeal,     N/A
            what was the ruling ?

        7.  Date of ruling on appeal      N/A

3.  With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?
        YES ( )    NO ( X )

    A.  If yes, give name of court, case title and case number:     N/A

            N/A

    B.  Did the court rule on your petition?  If so, state

        (1)  Ruling:     N/A

        (2)  Date:     N/A

**4.  WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

**YES ( X )  NO ( )**

If yes, explain:   Filed a petition for trial court to put the postconviction
      issues not dismissed back on call. The motion was denied and appeealed.

## PART III -- PETITIONER'S CLAIMS

1.  State briefly every ground on which you claim that you are being held unlawfully.  Summarize briefly the facts supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A)  Ground one ~~Mr. Trotter was denied effective assistance and unreasonable~~
Supporting facts (tell your story briefly without citing cases or law): level of assistance of
counsel. Where Appellate Counsel failed to appeal denial of Mr. Trotter's
reasonable doubt issue to the Illinois Supreme Court and post conviction
counsel failed to argue appellate counsel's failure to the post conviction
court and on post conviction appeal. The Appellate Court's decision affirm-
ing Mr. Trotter's conviction according adjudication of reasonable doubt
~~issue is contrary to or involves an unreasonable application of clearly~~
established federal law, results in a decision based on an unreasonable

determination of facts in light of the evidence presented in State Court.

(Continued Ground One: Attached)


(B)  Ground two ~~Mr. Trotter's conviction results from a void judgment.~~
Supporting facts:
            Which is contrary to a question of law and which is

            a unreasonable application of law to facts. According

            speedy trial violation issue. (See Continued Ground

            two; Attached)

(C)  Ground three Mr. Trotter was denied a full and fair post conviction proceedings
     Supporting facts: due to a unreasonable level of assistance of post conviction
     counsel and appellate post conviction counsel. Such that a fundamental mis-
     carriage of justice has occurred. Where due to issues raised in post convict-
     ion petition and evidence attached thereto and hereto there is evidence not
     presented in the trial due to ineffective assistance of trial counsel which
     would have established Mr. Trotter innocent. Where counsel had the affidavit
     of witness Darrell Tarr and could have called him as a witness in Mr.
     Trotter's trial (Second) and did not. Also where post conviction counsel
     could have called Mr. Tarr to testify at Mr. Trotter's post conviction hear-
     ing on the State's motion to dismiss in the interest of justice. Also where
     trial counsel failed to present alibi witnesses and documentation in support
     thereof and postconviction counsel failed to raise issues during hearing or
     amend petition. (See continued Ground three and affidavit hereto of Mr.
     Trotter attached)

(D)  Ground four _____
     Supporting facts: _____

     _____

     _____

     _____

     _____

     _____

     _____

     _____


2   Have all grounds raised in this petition been presented to the highest court having jurisdiction?
        YES ( )   NO (X)

3.  If you answered "NO" to question (16), state briefly what grounds were not so presented and why not:
        Reasonable Doubt issue not presented in PLA due to ineffective assistance

        of appellate counsel windowing out issues.

## PART IV -- REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing Sue Rilley PD 2600 So. California, Chicago, Il 60608.
William Laws

(B) At arraignment and plea _____

(C) At trial Mary Danahy PD 2600 So. California Ave. Chicago. Il 60608

(D) At sentencing Mary Danahy supra.

(E) On appeal Anna Ahronhiem; James Chadd, Justya Garbaczewska

(F) In any post-conviction proceeding Celia Kilpatrick, Brainden Maxs, G.W. Brown

(G) Other (state): N/A

## PART V -- FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO ( X )

Name and location of the court which imposed the sentence: N/A

Date and length of sentence to be served in the future N/A

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: May 14, 2008
(Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_____
(Signature of petitioner)

_____
(I.D. Number)

_____
(Address)

REVISED 01/01/2001

7

## GROUND ONE

## MR. TROTTER WAS NOT PROVEN GUILTY BEYOND A REASONABLE DOUBT

The trial court found Mr. Trotter guilty of Murder, Aggravated Kidnapping and Residentiary Burglary. When Mr. Trotter asked for a direct finding according the trial court's rationale of guilt the court refused to given same. Thus, Mr. Trotter does not know the factual finding the trial court used to convict. Nonetheless, on appeal a reasonable doubt issue was raised before the Appellate Court. That factual finding was against the evidence presented and was unreasonable in up holding the conviction of Mr. Trotter.

Here although the Appelalte Court found that on a reasonable doubt determination the court must review the evidence in the light most favorable to the prosecution, that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The court found that the evidence proved Mr. Trotter's finger print was found on a Coke can at the murder scene. That the Illinois Supreme Court has held that a conviction may be sustained solely on the basis of fingerprint evidence. That the State is not required to negate every conceivable possibility that the print was impressed at some time other than during the commission of the offense and that attendant circumstances can support the inference that the print was made at the time of the crime.(at. 16-17) The court also found that Mr. Trotter possessed the murder weapon as according Flowers and Coker testimony and that Mr. Trotter told them not to get caught with the gun because it was "hot" and that they could caught a case with it. According Flowers and Coker's testimony. Other evidence and testimony showed Mr. Trotter was in possession of the victim's property. Such evidence 'amply demonstrates' Mr. Trotter wasproven guilty beyond a reasonable doubt.(at. 17)   The Appellate Court over-looked the facts that; the evidence at trial showed that the acts of kidnapping, restraint, burglary and murder could not be contributed to Mr. Trotter. Because the evidence showed that those acts where committed by codefendants Michael Tillman and Steven Bell, according to Michael Tillman's confession presented during trial. The State's circumstantial evidence and argument that Mr. Trotter was involved in the crimes committed against Ms. Howard was based upon mere spectuation and

1.

conjecture (Inferences based upon Inferences). The prosecutor did
not present any evidence whatsoever, that Mr. Trotter was at
either crime scene during commission of a crime. Matter of fact;
the prosecutor did not present any evidence whatsoever Mr. Trotter
was ever at either crime scene during any period of time. The
Appellate Court found that there was evidence Mr. Trotter was in
the apartment where Ms. Howard's body was found, where Mr. Trotter's
finger print was found on the Coke can in the immediate vicinity
of the crime and under circumstances as to establish beyond a
reasonable doubt that they were impressed at the time of the
commission of the crime and that the State was not required to
negate every conceivable possibility that the print was impressed
at some time other than during the commission of the offense. (At.16-
17) However, no evidence established when the print was impressed
on the pop can nor where the can was when the alleged print was so
impressed. Thus, the finger print on the can does not meet the
inference it was impressed 'at the time of the commission of the
crime.' The Appellate Court also found that the State is 'not
required to negate every conceivable possibility that the print was
impressed at some time other than during the commission of the
offense'.(at.17) However, the State did not present any evidence
to establish when the print was impress nor did it present any
evidence to rebut defense evidence that the print was found on the
can while the can still retained condensation on it and that the
Coke pop can was discovered hours after the crimes had occurred.
Where the victim's house had been burglarized before Eddie Howard
found it ransacked and items missing at approximately 4: O'Clock
that day (PM) and even still more hours after Ms. Howard's body
was found, with rigor mortis therein, at approximately 12: O'Clock
that night going into the early morning hours, where in the lab
officer dutied the can hours later after waiting for it to dry,
at approximately 2:am. Thus, the evidence unrebutted established
that the print was on the can while condensation was also on the
can and that the can had be placed at the crime scene numerous hours
after Ms. Howard's death had occurred and a great many hours after
her apartment had been burglarized. Thus, the can with the print
thereon could not have been at the crime scenes during the commiss-

ion of any crime against Ms. Howard. The court further noted that
the evidence presented at trial established that both Coker and
Flowers testified when they got the gun from Mr. Trotter, he told
them it was "hot" and they could "catch a case" if found with it.
However, such evidence did not establish that Mr. Trotter shot
anyone with the gun or was present when it was used to shoot some-
one. Moreover, the State did not rebut Ms. Spades testimony that
while she was staying with Mr. Trotter. Mr. Flowers came to Mr.
Trotter's house attempting to sell Mr. Trotter the gun and stereo
equipment. That Mr. Trotter told Mr. Flowers he did not want. That
during Mr. Trotter's and Mr. Flowers conversation she heard Mr.
Flower ask Mr. Trotter for money owed Mr. Flowers for electronic
equipment Mr. Flowers had recently sold Mr. Trotter. The evidence
at trial established it was Mr. Coker and Mr. Flowers whom had
possession of the victim's car and personal items and dtereo and
electronic equipment. The trial evidence shows that Mr. Coker and
Mr. Flowers had possession of the gun the day of the crime and
they possessed the victim's car and other items many days after
the crime. That they each where in the same street gang as Mr.
Tillman. Mr. Flowers was arrested with the murder waepon and that
a knife was located in the car after Mr. Coker feed from it.Thus,
the evidence viewed in light most favorable to the prosecution
failed to establish Mr. Trotter's guilt of murder, aggravated
kidnapping and residential burglary.

Mr. Trotter was denied effective assistance of counsel on
appeal where counsel failed to appeal the Appellate Court's decis-
ion dening relief on the reasonable doubt issue. Waiving federal
review thereof. Where the evidence clearly established that the
facts and evidence presented at trial did not establish Mr.Trotter's
guilty beyond a reasonable doubt and he was entitled to reversal.

Resepctfully Submitted,

8.

## GROUND TWO

## THE CIRCUIT COURT LACKED JURISDICTION TO TRY MR. TROTTER

December 1988 Mr. Trotter was convicted of Murder and related offenses and he appealed. (C.243-C.245) September 15, 1993, his conviction was reversed for a new trial. (C.173) See **People v. Trotter**, 254 Ill.App.3d 514, 626 N.E.2d 1104 (1st Dist., 3rd Div. 1993).

On March 16, 1994 The Appellate Court Clerk issued the mandate attached to a notice cover letter, to the Clerk of the Circuit Court.(C.171) The cover-letter of the Appellate Court Clerk was stamped filed March 18, 1994 at 3:00 PM., by the Circuit Court Clerk. (C.171) On March 22, 1994 the Criminal Division Clerk of the Circuit Court recieved the documents (Cover-letter and mandate) and again stamped filed the cover-letter and also the mandate itself. (C.171) On July 18,1994, Mr. Trotter filed a motion to dismiss the criminal prosecution wherein he was not brought to trial within a 120 days as required by Illinois Speedy Trial Act. Defense counsel claimed during the hearing thereon; the previous Friday had been the 122nd day of the 120-day statutory speedy trial term, whereas the State contended that the present date was only the 119th day of the term. The state's contention was based on the position that the mandate was not filed until March 22, 1994 as shown by the criminal division file stamped mark thereon. (R.B4) The trial court denied Mr. Trotter's motion to dismiss, holding the term had not run because the March 22nd criminal division file stamp was controling for speedy trial purposes.(R.B9) The court reaffirmed this ruling in denying Mr. Trotter's post-trial motion.(R.H23) The Appellate Court affirmed the trial court holding; "When a defendant prevails in an Illinois court of review, a mandate issues which, **when properly docketed**, commences the running of the 120-day term." (Op. at 14) The Appellate court futher held'under **Williams**, a mandate issues when it is properly docket. In **Thomas**, the parties correctly agreed that the date on the mandate should prevail over a date stamped on a letter. We find that the date stamped on the mandate and on the entry in the memoranda of orders constitutes the date the appellate court mandate was filed for the purpose of triggering the computation of the 120 days for a speedy trial.' (Op.

at 15.) However, the Appellate Court's factual finding according

**Thomas**, was misread and mistated in reaching it's conclusion.

The critical issue in **Thomas**, as in the instant case, was
which date started computation of the 120-day period of the
Speedy trial Satute. In **Thomas**, the mandate was issued April 26,
1984. **Thomas**, 500 N.E.2d at654. The People sought leave in the
Illinois Supreme Court, which was denied on October 2, 1984. Id.
The parties received a letter date October 2, 1984, that the
mandate from the Illinois Supreme Court would issue on October
23, 1984. Id. On November 2, 1984, a letter was sent from the clerk
of the appellate court to the clerk of the circuit court. Id.This
letter stated that the mandate was enclosed. (See Appendix "B").
The mandate in **Thomas**, was stamped filed November 9, 1984. Id.

The Appellate Court's opinion in the instant case stated that,
**"In Thomas, the letter sent from the clerk of the appellate court
to the  clerk of the circuit court stated that the mandate in the
case was inclosed and was date-stamped November 2, 1984.... The
parties stipulated that the appellate court mandate was filed with
clerk of the circuit court on November 9, 1984, i.e., the date the
mandate was file-stamped."** (Op. at 15, emphasis added). However,
The Appellate Court in this case made the incorrect observation
that the "cover letter" was stamped with the date November 2 while
the mandate was stamped November 9. In actuality, the cover letter
was merely **dated November** 2; the issue of when, or even whether,
the cover letter was file stamped was **never addressed** by the court
in **Thomas**. Thus, there was **no stipulation** in **Thomas** that the stamp
on the mandate controls over a stamp on the letter because the
issue of conflicting dates stamped on the cover letter and on the
mandate itself was **never** raised in **Thomas**. The Appellate Court in
this case was therefore incorrect in stating that the parties in
**Thomas** "correctly agreed that the date on the mandate should prevail
over a date stamped on a letter." (Op. at 15.)

In the instant case, the mandate of the appellate court was
recieved March 18th at 3:09 PM and filed that date as the stamped
file mark clearly shows. (See Appendiz "B") Where the mandate was
in fact attached to the cover letter  giving notice to the circuit

clerk thereof and directions to file same. Wherefore, the circuit
court lost subject matter and personal jurisdiction on July 18,
1994 when Mr. Trotter timely moved the court for discharge and
dismissal of the criminal prosecution against him for violation
of the Illinois Speedy Trial Act. Here the right was not liberally
construed so as to give effect to the constitutional right to a
speedy trial. **People v. Hawkins**, 212 Ill.App.3d 973,571 N.E.2d 1049,
1053 (1st Dist. 1991). Thus, Mr. Trotter's conviction results in
a void judgment wherein the court lacked jurisdiction to try Mr.
Trotter. See **Wade**, 506 N.E.2d at 955. For this reason, this Court
should grant relief and issue writ of habeas corpus.

                              Respectfully Submitted,

## GROUND THREE
### TIMELINESS ISSUES

In this hapeas corpus petition Mr. Trotter contends that the petition is timely filed as shall be illustrated below.

If this court should find said petition is not timely filed, then time bar should be relaxed, where Mr. Trotter did not recieve a full and fair judicial proceedings' below addressing timeliness of postconviction petition in the trial court and on appeal there-of, and as a result the timeliness issue was incorrectly applied against Mr. Trotter resulting in cause and prejudice herein. Where procedural default may be applied if the hapeas corpus petition is held untimely file due to findings below, and or and due to the proceedings below and Mr. Trotter's repeated attempts to correct said mishaps according timeliness issues.

## ESSENTIAL HISTORY FACTS:

September 3, 1986, Mr. Trotter and two Co-defendants Michael Tillman and Steven Bell where indicted on murder and numerous other related charges. Mr. Trotter was tried separately from the two codefendants. Codefendants Tillman and Bell, were tried in simultaneously held bench trial, wherein the court found Tillman guilty as charged and Acquitted Bell of all charges'.

December 22, 1988, Mr. trotter was convicted of murder and related offense. However, on September 15, 1993, the Appellate Court reversed the conviction and remanded for a new trial. See **People v. Trotter**, 254 Ill.App.3d 514,626 N.E.2d 1104 (1st Dist. 1993). On July 24, 1994 Mr. Trotter was again convicted in a bench trial and sentenced to natural life and concurrent fifteen years there upon. He appealed and the Appellate Court affirmed the con-victions and sentences, but remanded for a limited hearing concern-ing his post-trial motion alleging ineffective assistance of trial counsel. See **People v. Trotter**, No. 95-0477, Rule 23 Order at 25. December 31, 1996. The Illinois Supreme Court denied petition for leave of appeal April 2, 1997. Note: this appeal was filed by newly assigned Appellate Defender Attorney  James Chadd rather than Attorney Anna Ahronheim who filed the original brief in this appeal before the Appellate Court and the first original appeal.(See No.

7.

95-0477 and **People v. Trotter,** 254 Ill.App.3d 514, 626 N.E.2d 1104
(1st Dist.3d Div.1993)) In Attorney Chadd's PLA Brief he only
riased Mr. Trotter's Speedy Trial violation issue and over Mr.
Trotter's request abandoned the other six claims raised by the
original Attorney Ahronhiem. Nonetheless, the PLA was denied and
Mr. Trotter was returned to the Cook County Circuit Court on June
5,1997. The trial court then remanded himto the custody of the
Cook Count Sheriff on the remand process. However, Mr. Trotter had
continued the appeal and filed a pro se writ of Certiorari to The
United States Supreme Court. (See Apprendi "C")

   The trial court proceeded on the remand proceedings irrespect-
ive of the pro se petition for Writ of Certiorari. Thus the pro-
ceedings on remand are void for lack of subject matter jurisdiction.

   On April 30,1998 the trial court denied the remand post-trial
proceedings and appeal was taken wherein the Appellate Court
affirmed the trial court January 12, 2000. (See **People v. Trotter**,
98-2424 January 12,2000) Attorney Chadd abandoned PLA thereof. Thus,
Mr. Trotter pro se sought leave of appeal before the Illinois Supreme
Court on March 27, 2000. Mr. Trotter was still being housed at the
Cook County Jail on process of the Circuit Court. (See Appendi "D")
Leave of appeal was denied.

   On July 22, 1997 during the remand proceedings, Mr. Trotter
appeared before the court and presented a series of pro se motions.
The motions included; notice of service, motion for extension
of time to file a postconviction petition with affidavit and exhibits;
Motion for transcripts and appointment of counsel. In Mr. Trotter's
motion for transcripts and appointment of counsel he attached an
addidavit wherein he atested he needed a complete copy of his trial
records and transcripts in order to prepare his post conviction
petition. **(The petition would be due October 2, 1997 according to
the Illinois Supreme Court's denial of his April 2, 1997 PLA petition.
Irrespective of the pro se petition for writ of certiorari pending
before the United States Supreme Court.)** Also in mr. Trotter's pro
se motion he attached another affidavit wherein he atested that he
had an appeal before the United States Supreme Court and that he
was on remand from the Appellate Court to the Circuit Court. Wherein

8.

the circuit court had remanded him to the county jail on process
of the court, and that he wanted to 'timely' present his post
conviction claims of sham of court, false evidence and misconduct.
Although according to the July 22, filings he had approximately
72 days before the October 2, post conviction filing deadline to
file his post conviction petition. He was alleging he would probable
not be able to do so, because he had been remanded to the trial
court without his transcripts and documents and that those docu-
ments whee incomplete. That he needed documents to prepare and
support his post conviction petition. He asked the trial court to
grant him an extesnsion of time to file his post conviction petition.
and to appoint counsel to assist him with the filing of his post
conviction petition and obtaining the documentation. He asked the
court 'to appoint counsel to protect' his rights. (See Attached
Exhibit #1)

Now the record is unclear of precisely what date the trial
court appointed post conviction counsel to "protect' Mr. Trotter's
rights', but the record show on August 20th, the trial court informed
Mr. Trotter (During an appears before the court on remand proceed-
ings.) that the court had already appointed post conviction counsel
to prepresent Mr. Trotter's post conviction claims. At this pointthe
record supports that there would have been approximately 40 days
left to file the post conviction petition. (If the trial court did
not treat the July 22, filings as a postconviction petition. As
the trial court years later interjected during the hearing on the
State's motion to dismiss, for the first time.) Nonetheless, no one
seems to know why the trial court appointed the post conviction unit
as Attorney for Mr. Trotter on post conviction matters. However,
**Post conviction Unit Supervisor Winten informed Mr. Trotter that
from the record it appeared that the trial court had appointed
his unit as counsel because the court treated Mr. Trotter's July
22, 1997 filings as a post conviction petition. Mr. Winten had
written Mr. Trotter this letter (See Appendí "B") in regards to
one of Mr. Trotter's numerous letters attempting to reach his
Post conviction Attorney and one of Mr. Trotter's letters had been
forwarded to Mr. Winten for review.** Wherein Mr. Trotter had been
complaining he could not reach his post conviction attorney B. Maxs.
The record does not show any relevant or meaningful assistant of Attorney B.

9.

Max in regards to Mr. Trotter's postconviction matters or his
appointment, for whatever purpose. In Suprevisor Winten's letter
it states that someone had been appearing before the court in Mr.
Trotter's behalf for over a year obtaining general continuings.
Mr. Winten's letter was in respond to Mr. Trotter's letter com-
plaining that he could not reach his attorney. It should be noted
at this point in time Mr. Trotter had not been personally before
the court to make the court aware of his complaints. He had how-
ever, sought to obtain the missing records and transcripts to
file his postconviction petiton. (See Apprendi "F")

    Thus, the record clearly shows that the court appointed an
attorney from the Cook County Postconviction Unit to represent Mr.
Trotter on his July 22,1997 motions according postconviction
matters. The record clearly demonstrates that Mr. Trotter was
concerned with the timely filing of postconviction matters and he
was attempting to obtain the essential documents to prepare and
support his postconviction petition with. Even though he should
not have had to file his postconviction petiton by October 2, 1997
where he had appealed to the United States Supreme Court, which
tolled the time period. More over, where the Appellate Court still
retained limited jurisdiction over the remand the appeal was not
actually closed, and the rules of the court concerning piecemeal
litigation seems to indicate that the time period would have been
tolled during the remand proceedings and the appeal thereof; as
suggested by Mr. Trotter's Appellate Defender James Chadd. Whatever
the case may be. The record clearly shows that Mr. Trotter didnot
recieve a fair and full postconviction hearing and appeal process
and that he was ill-represented during the hearing and appeal there-
of. Postconviction Attorney Brown merely had to inform the trial
court that her office believed that the court treated Mr. Trotter's
July 22, 1997 filings as a postconviction petiton and that is why
her  office informedMr. Trotter same and did not seek to amend the
petition filed pro se to show lack of culpable negligence in the
filing thereof. It was the trial court that remanded Mr. Trotter
to the trial court on the limited remand. It is not even reasonable
to assume that Mr. Trotter had the transcripts and records of two
trials and appeals with him when he was writted back to the trial
court on the limited remand proceedings. Thus, it is only logical

10.

to infer that Mr. Trotter was attempting to obtain the documents
in order to timely prepare and file post conviction petition. Mr.
Trotter was denied a reasonable level of assistance of counsel in
the post conviction dismissal hearing where Post conviction Attor-
ney Brown merely had to inform the trial court that her office
had been proceeding under the belief that the court had in fact
treated Mr. Trotter's July 22,1997 filings as a post conviction
petition and that her office had so informed Mr. Trotter the court
had. (See exhibit #1) Moreover, said attorney provided a unreason-
able level of assistance where she was unprepared during the hear-
ing to dismiss. Where she did not inform the court that counsel and
her office believed the court had treated Mr. Trotter's July 22nd
filings as a postconviction petition and she also failed to amend
the pro se post conviction petition to show a lack of culpable
neglect on Mr. Trotter's part and to argue the tolling issues and
timeliness there-under. Where the Appellate Court still retained
jurisdiction due to the limited remand and no notice of appeal
having to be file after the trial court's April 30, 1999 limited
hearing and or and the statute was also tolled during the period
that Mr. Trotter had sought writ of certiorari of The United States
Supreme Court. Counsel also provided an unreasonable level of
assistance where she failed to argue Mr. Trotter's petition was
filed under both the post conviction hearing act and the relief
fromjudgment act. Wherein the petition cited to both statutes and
raised issues of perjury and falsification of evidence and void
judgment issues. (See Postconviction/Relief From Judgment Petition)
    Mr. Trotter was again denied unreasonable level of assistance
of counsel on post conviction appeal. Where counsel thereon failed
to properly consult with Mr. Trotter according the timeliness of
his petition and argue that the filing was tolled during the
direct appeal to the United States Supreme Court and during the
remand period and appeal thereof. Thus, the tolling period effected
the filing date until after said matters had been dealt with.
Nor did she argue lack of culpable neglect according Mr. Trotter's
July 22, 1997 filings and the failure to provide said documents
wherein Mr. Trotter could timely file petition as an alternative
arguement.
    Mr. Trotter was also denied a unreasonable level of assistance

11

of counsel on appeal wherein counsel failed to raise the issue that
the trial court had not dismissed all of Mr. Trotter's postconvict-
ion issues and postconviction counsel had neglectly filed an notice
of appeal without filing a Supreme Court Rule 651(c) affidavit and
attempting to have an evidentiary hearing on the ineffective assist-
ance of appellate counsel issue not dismissed by the court.

Wherefore, Mr. Trotter has filed with the trial court a motion
to put the post conviction petition back on call. Which the trial
court denied and appeal was taken there-from. Which is still pend-
ing as of this filing. Thus, this proceedings should be placed in
abeyance pending the out-come of that proceeding.

                                        Respectfully Submitted

STATE OF ILLINOIS )
                  ) SS
WILL        COUNTY )

### AFFIDAVIT CLARENCE TROTTER

Clarence Trotter, duly deposes and says that the facts and statements herein are true and correct to the best of affaint's personal knowledge and belief therein and affiant hereto below subscribes so being under penalty of perjury as provided by law.

Affiant is prisoner and petitioner herein seeking redress in habeas copus proceedings. Affiant was convicted in the Cook County Circuit Court after both jury and then bench trial. The affiant believes that he did not recieve a fair trial and fair appeal and post conviction proceedings. Due to state officials interference through withholding of transcripts with vindicating testimony therein and other transcripts with evidence of official misconduct of the police and prosecutor in the prosecution of affiant clarence trotter. Such evidence relating to the August 11, 1986  court appearance of affiant at brach court 66. Which the post conviction petition of affiant alleges was attached thereto, but said transcript beared the date of August 12,1986 when in fact it was the transcript of August 11, 1986. (See Post conviction Petition issues) That because the transcript has the cover page of the 12th on it and the back page of the 13th the court below seems to not recognize or consider that said transcript is actually the transcript of the 11th of August as indicated by petitioner/affiant in order to deny affiant due process of law. Although affiant has presented said transcript and clearly demonstrated in his moving papers that said transcript is the alleged missing transcript of August 11,1986 rather than August 12,1986 as alleged by the front cover page attached thereto; the Cook County Circuit Court will not look into the truth of the matter and no appointed attorney will prepare issues related to the truth of the matter nor litigate post conviction petition issue according the truth of the matter. If such truth of the matter was raised at any level of the State court proceedings by appointed counsel the court would have to

consider the transcript and State Government's denial of it's exist-
ence for the pass 22 years and counting. Moreover, the merits of
Affiant's claims that his conviction results from official miscon-
duct within the confines of the courtroom and out side of the court
room.

Affiant also attached exhibits and raised an issue in his post-
conviction petition that alleged that Police Officer Frank DeMarco
testified November 18, 1986 before Judge Kenneth Gillis that he
did not locate a finger print on the Coke pop can that the State
alleged DeMarco found and said print belonged to Mr. Trotter. Affiant
alleged therein that he had attempted to obtain a copy as required
by State Law of siad transcript and State Officials had prevented
affiant from obtaining said transcript. That such interference by
State Officials has deprived affiant of due process and equal pro-
tection under the law. That such interference has deprived affiant
of a full and fair judicial determination of the truth of the matters
affiant alleges and vindication of affiant's innocent.

Affiant has been repeatedly denied effective representation in
the trial court and on appeal thereof. Where affiant has repeatedly
informed each attorney of the facts raised in affiant's post con-
viction petition and as shown by the exhibits accompaning his post
conviction petition. Where no attorney will raise issues to vindi-
cate affiant's rights as alleged in affiant's postconviction petit-
ion.

Affiant has a appeal wherein affiant attempted to have none-
dismissed post conviction claim of ineffective assistance of
appellate counsel placed back on court's call. Affiant hopes that
this habeas copus proceeding be placed in abeyance until affiant
can complete said appeal.

SUBSCRIBED AND AFFIRMED TO            RESPECTFULLY SUBMITTED,
BEFORE ME 4th OF MAY    2008

                                     *Clarence Trotter*
                                     AFFIANT CLARENCE TROTTER
                                     P.O. Box 112 #A63323
                                     Joliet, Ill 60434

*Crystal L. Mason*

**"OFFICIAL SEAL"**
**Crystal L. Mason**
Notary Public, State of Illinois
My Commission Exp. 11/10/2008

STATE OF ILLINOIS )
WILL        COUNTY )SS

### AFFIDAVIT OF CLARENCE TROTTER

Affiant Clarence Trotter duly deposes and says that the facts
and statements herein are true and correct in substance and belief
to affiant best personal knowledge thereof. Affiant subscribe so
being under penalty as provided by law.

Affiant is the Petitioner seeking Habeas Corpus Relief herein
and seeks to proceed thereon without cost thereof. Affiant does
not have a job. Does not have money in banking accounts. Does not
have property of value and owns no real estate. Affiant is poor
and only recieves assistance from family and friends when each is
able and state pay in the amount of ten dollars per month if the
institution is not on lock-down due to inmate cause.

Thus, affiant respectfully Prays that this Court shall allow
affiant to proceed without cost of these proceedings.

Respectfully Submitted,

*Clarence Trotter*

I declare under penalty of perjury that the foregoing is true and
correct.

*Clarence Trotter*

*Box 112  #A63323*

*Joliet Ill 60434*

# APPENDIX A

SIXTH DIVISION
December 31, 1996

<u>NOTICE</u>

The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

1-95-0477

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 86 CR 10969 |
| | ) | |
| CLARENCE TROTTER, | ) | Honorable |
| | ) | Vincent Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Following a bench trial, defendant Clarence Trotter was
convicted of murder, aggravated kidnapping and residential
burglary and sentenced to natural life in prison for offenses in
connection with the death of Betty Howard. We affirm defendant's
convictions and sentence.

On appeal, defendant raises five issues: (1) whether the
120-day term mandated by the Speedy Trial Act was violated; (2)
whether the State proved defendant guilty beyond a reasonable
doubt; (3) whether the trial court properly barred the defense
from introducing a post-arrest statement of codefendant Steven
Bell; (4) whether the trial court properly denied defendant's <u>pro</u>

1-95-0477

se motion alleging ineffective assistance of counsel; and (5)
whether the court must vacate defendant's conviction for two
counts of murder where only one person was killed.

This case comes before us for a second time.  Three men
(defendant Trotter, Michael Tillman and Steven Bell) were charged
with murder and other related crimes.  Clarence Trotter, who was
tried separately from Tillman and Bell, is the only defendant
involved in the instant appeal.

After a jury trial in 1988, defendant was convicted of
murder, aggravated criminal sexual assault, aggravated
kidnapping, residential burglary, and theft in connection with
the death of Betty Howard.  The trial court imposed natural life
imprisonment for murder and 15 years' imprisonment for
residential burglary to be served concurrently.  On appeal, this
court reversed defendant's convictions, finding that defendant's
confession was improperly obtained and that the trial court
committed certain evidentiary errors, and remanded the cause for
a new trial.  People v. Trotter, 254 Ill. App. 3d 514 (1993).
The trial on remand is the subject of the instant appeal.

At the trial on remand, the testimony of the State's
witnesses revealed the following events.  The body of the victim,
Betty Howard, was found during the course of the evening of July
20, 1986, in apartment 7C of the building in which the victim
resided.  The cause of death was a gunshot wound to the head and
a stab wound that penetrated the heart.  Dr. Joanne Richmond, the

2

1-95-0477

medical examiner who performed the autopsy on the victim on July 22, 1986, found nine separate evidences of injury.  The victim sustained a close range gunshot wound to the left temple, bruises on the left eyelids, ligature marks on both wrists, an abrasion on the back of the right forearm, and four stab wounds, one which entered the heart and three on the right side of the neck.  Dr. Richmond testified that the victim "died perhaps a day before" but was not able to give an exact time of death.  Dr. Richmond recovered the bullet from the victim's brain and the bullet was later matched to a gun possessed by defendant.

Betty Howard, the victim, resided with her son Myron Russell in apartment 5D at 2860 East 76th Street.  Myron would turn two years old on July 20, 1986, and the family had planned a birthday party for that date at Washington Park.

In the morning of July 19, Eddie Howard saw his mother when she helped him with a flat tire on his car at his house.  In the evening of July 19, the victim planned to bring Myron to Eddie's house for Eddie to baby-sit but Betty never appeared that night.

Between 3:00 and 7:15 p.m. of July 19, the victim visited Betty Brandon Woods, her sister-in-law and close friend, at the Woods' residence.  The victim planned to return to the Woods house to eat later that night but never appeared.

On July 20, 1986, Woods placed four telephone calls to the victim's home.  At 9 and 10 a.m., no one answered the victim's phone.  At noon, the victim's phone line was busy.  At 12:10

3

1-95-0477

p.m., a male voice answered the victim's phone and told Woods
that the victim already had left for the picnic in the park.
Woods found that information "strange" because the victim was to
pick up Woods on the way to the picnic.

Between 3 and 4 p.m. on July 20, when the victim failed to
show up at the park for Myron's birthday party, Eddie and his
girlfriend Rose Vontrees drove to the victim's apartment.  Upon
his arrival at the apartment building, Eddie noticed that the
victim's newly-purchased car, a Ford Fairmont, was missing from
the parking lot.  When Eddie entered the victim's apartment, he
observed that the contents of the victim's purse had been spilled
onto the couch and the apartment had been ransacked with all her
belongings strewn on the floor.  Eddie also noticed that several
items were missing, such as stereo equipment from an
entertainment center including a video cassette recorder (VCR),
mixer, turntable and equalizer.  Eddie notified the police.

Shortly before 9 p.m. on July 20, police officer Arnold
Martines, with his partner, received and responded to a burglary
call at the victim's apartment.  After speaking to Eddie and
entering the victim's apartment, Martines observed that the
living room area was well-kept, the bedroom area was in disarray,
a purse had been emptied onto the couch, and the stereo cabinet
was missing items.  Martines found no signs of forced entry.
Martines made a missing person's report for the victim and Myron
and notified other authorities.  Martines left about 10 p.m.

4

1-95-0477

Police officer Raynor Ricks, an evidence technician, responded to the missing person's call. Ricks photographed the victim's apartment and lifted fingerprints in the bedroom, from the stereo cabinet, and other items in the apartment.

Detective Peter Dignan, accompanied by detective Ron Buffo, also responded to the missing person's report. While Dignan was investigating in the victim's apartment, Eddie's sister, Angelita Howard, arrived with Michael Tillman who lived on the ground floor of the apartment building and was a janitor or caretaker in the building. Tillman said that he had been painting on the seventh floor and heard noises there. Several family members, Tillman and the police proceeded to apartment 7C, i.e., the apartment to which Tillman directed them. Dignan opened the apartment door and Buffo shined his flashlight inside which was pitch dark. Eddie testified that Tillman screamed "hey, that's your mama." Dignan testified that when Tillman made that remark, there was "[n]ot a chance" that Tillman was in a position to see the body of the victim.

The police discovered the victim in the bedroom and two-year-old Myron, who was alive, in the bathroom. Dignan discovered the deceased body of the victim with her wrists tied to radiator, her mouth gagged very tightly, her legs spread-eagled and her knees bent. The victim had on no clothing other than a tube top which had been pushed above her breasts and a blouse hanging off her body. Detective Dignan noticed several

5

1-95-0477

stab wounds to the upper chest and neck area and also a head
wound, possibly caused by a blow to the head or a gunshot.  The
victim's watch, which was no longer running, read 9:40.

Dignan then searched the apartment and found 2-year-old
Myron in the bathroom.  Myron was whimpering and crawling on the
bathroom floor.  Dignan examined the child, found no injuries and
gave him to a family member for care.  Dignan found, on the
bathroom floor, small bindings similar to the type used to bind
the victim.

In the kitchen Dignan observed that a piece of screen had
been cut with a sharp object and a piece of broken glass had been
placed on the counter.  The doorjamb appeared to have been pried
or kicked.  A wet rag was in the kitchen sink and two red Coke
cans were on the counter.

Police officer Frank DeMarco, an evidence technician, was
assigned to process the crime scene.  Demarco examined the
victim, gathered evidence, photographed the apartment, dusted for
fingerprints, and inventoried items recovered at the scene.
DeMarco recovered ridge impressions from the kitchen door and an
empty Coke can.  DeMarco turned the cans over to the photography
section of the crime laboratory.

By stipulation, police officer Michael Day testified that he
received and photographed the Coke cans which had been dusted
with powder to reveal latent ridge impressions.  Day then passed
the photographic negatives to the latent fingerprint

6

1-95-0477

identification section.  Police officer Thomas Krupowicz, in turn, examined the fingerprint on the empty Coke can and testified in court that it was identical to an inked print of defendant.

Charles Coker, nicknamed Dodo, and Boris Flowers, nicknamed Ashay, testified about obtaining a .32 caliber pistol from defendant.  In 1986, Coker was 16 years old and a member of the Black Gangster Disciples gang.  In 1986, Flowers held the position of a don, i.e., a high-ranking member, of the Black Gangster Disciples.  On July 19, 1986, Coker told Flowers that he wanted a gun for protection from a rival gang, the Vice Lords. The following evening (July 20), Coker met Flowers at a restaurant and together they went to defendant's house.  Coker and Flowers proceeded into the basement of the house where defendant was sitting on a bed.  Defendant reached under the pillow and passed a purple felt Crown Royal bag to Flowers who, in turn, took a handgun out of the bag, unloaded it and handed it to Coker.  When Flowers emptied the gun, there were only five bullets even though the gun would hold six bullets.  Coker looked at the gun and identified it as a silver .32 caliber pistol.

While in the basement with Flowers and defendant for about 1 hour and 45 minutes, Coker also observed several items on a table.  Coker saw a VCR, an equalizer, a mixer, a camera, some film and a turntable.  Defendant told Flowers that he just got the equipment and would sell it all for $100.  Coker also saw a

7

1-95-0477

set of car keys on the window sill and testified that defendant
gave the car keys to Flowers.

Coker testified that he asked defendant "what's up with the
gun?" Defendant responded "don't get caught with it because you
might catch a case." Flowers testified that defendant told them
not to get caught with the gun because it was hot, meaning that
someone had been shot with it. Coker and Flowers took the gun
and left defendant's house. Flowers kept the gun for one or two
days and then Coker took the gun home. Coker kept the gun in a
closet about three days until his mother found it. Coker then
returned the gun to Flowers who put it in a dresser in his house.

On August 9, 1986, Coker was riding as a passenger, with
Terrence driving, in a red four-door Ford Fairmont and was
involved in a police chase. Before the car chase, other people
were in the car, including a person named Little Bill. The car
slid into a wall and when the car door was open, Coker jumped out
and ran away. Police officer Gregory Klychowski testified by
stipulation that on August 9, 1986, he was on routine patrol and
observed a four-door Ford Fairmont with no license plates and a
broken rear window. When Klychowski attempted to pull over the
Ford, the car fled, eventually crashing into a wall. Klychowski
arrested the driver, Tracy Harrison, but the passenger fled.

The next day (August 10), the police picked up Coker at his
house. At the police station, Coker identified defendant who was
sitting handcuffed in a room. Coker also identified certain

8

1-95-0477

stereo equipment (a mixer and an equalizer) as items he had first seen at defendant's house and later saw at Flowers' house. Coker identified cameras and lenses which he had first seen at defendant's house and also identified the .32 caliber gun.

Flowers testified that when he and Coker were at defendant's house on July 20 for the gun, defendant did not want to sell the stereo equipment to Flowers right away but instead wanted to "check it out for a couple of days first." Days later, Flowers eventually bought the VCR and equalizer from defendant. Coker testified that he saw the equipment from defendant's house at Flowers' house when he returned the gun to Flowers. Mary Woods, Flowers' live-in girlfriend, testified by stipulation that on July 30, 1986, Flowers and his friend Little Bill came home with a VCR.

On July 20, defendant also told Flowers that he had a car that "was hot" and he "wanted to get rid of it " Defendant knew that Flowers stripped cars and defendant only wanted the tires. The car keys were on the window sill and defendant handed the keys to Flowers. Defendant told Flowers that the car was a Ford Fairmont and it was located in a parking lot at 71st and Jeffrey.

The following weekend, Flowers went to look for the car with a person called Little Bill but they were unable to locate it. A few days later, Flowers ran into defendant and asked him about the car. Defendant responded by saying "you, dummy. The car is on the other side of Jeffrey, on 72nd."

9

1-95-0477

About a week later, Flowers and Little Bill found the car on 72nd in the lot and took the car. Flowers found several items in the car, including an umbrella, a radio, red high-heeled shoes, baby shoes, and baby clothes. Flowers eventually gave the car keys to Little Bill and never saw the car again

On August 10, the police came to Flowers' house and took him to the police station. The police took the VCR, the equalizer and the red shoes. Flowers eventually told the police where he had obtained the items and took the police to defendant's house. Flowers also took the police to his house to recover the gun which he had obtained from defendant on July 20.

Thereafter, at the police station, Eddie, the victim's son, identified items that the police had recovered and that had belonged to his mother. The items included the mixer, the equalizer, the VCR, a camera and lenses, telephone book, clothes hamper, keys to her car, a car stereo, eyeglasses, hair combs, sandals, Myron's toy water gun, and Myron's sandals.

Police detective Steven Brownfield testified he interviewed Coker and Flowers on August 10, 1986. Brownfield and other officers accompanied Flowers to his house where the police recovered the gun. On a prior occasion, other police officers, not including Brownfield, recovered a VCR, an equalizer and a pair of red shoes from Flowers' house. The police also recovered a car stereo from Flowers' car and the car stereo had been taken from the victim's car.

10

1-95-0477

Brownfield, other police officers and Flowers then proceeded to defendant's house.  After defendant signed a consent to search form, Brownfield and another officer searched defendant's residence.  Brownfield observed several items on defendant's table and took the mixer because it matched the description given by Eddie, the victim's son.  Brownfield and the other officers returned to the police station with defendant.  Brownfield later returned to defendant's residence for other items after he learned they were also missing from the victim's apartment.  The items included camera equipment and a yellow laundry basket.  On August 11, 1986, after the firearm testing was completed, the police advised defendant that he was under arrest for the murder of the victim.

The parties stipulated to expert testimony by Robert Smith of the police crime laboratory.  Smith would testify that the bullet recovered from the victim's head was fired from the .32 caliber handgun recovered from Flowers.

After the State rested its case, the trial court denied defendant's motion for a directed finding.  The defense then called four witnesses.

Michael Tillman testified to his name, birth date, and current residence, i.e., jail.  Tillman then refused to answer any further questions, asserting his fifth amendment rights.

Police detective Jack Hines testified that he worked on the homicide investigation of the victim and Tillman was eventually

11

1-95-0477

charged in connection with the victim's murder. In the course of
working on the homicide investigation, Hines spoke with Tillman
at the police station on July 21, 1986. At that time, the police
were under the impression that the victim had been stabbed and
Tillman said he thought the victim had been shot. Tillman never
told the police that he shot the victim and never said who shot
the victim.

Police detective John Yucaitis also investigated the
homicide of the victim and interviewed Tillman on July 22, 1986.
Tillman first said that his brother Kenny and Steven Bell were
responsible for the death of the victim. Tillman later recanted
and said that he and Bell accosted the victim. Tillman said that
Bell grabbed the victim on the fifth floor, pulled her into her
apartment and raped her while Tillman held her down. Tillman and
Bell then took the victim to the vacant apartment on the seventh
floor, tied her to the radiator, removed her lower clothing, and
stabbed her. Tillman said that braided rope was used to tie the
victim. Tillman and Bell broke the window because they wanted it
to look like a burglary. They then brought the victim's son,
two-year-old Myron, to the seventh floor and tied him up in the
bathroom. They removed property from the victim's apartment. In
talking to the police, Tillman first asserted an alibi, then
implicated his brother Kenny and Bell, later admitted his own
involvement, and eventually recanted his entire story. Tillman
claimed to know the location of the victim's car, but the police

1-95-0477

did not find the car after looking at four or five garages as
directed by Tillman.  Tillman never said anything about a gun or
the victim's property.  By stipulation, Yucaitis testified that
Coker told the police that he had gotten the victim's car from
Little Bill who had previously obtained it from Ashay, i.e.,
Flowers.

Linda Spates testified that she was a friend of defendant.
On August 8, 1986, Spates was staying with defendant when a man
named A-Shay arrived to collect money which he said defendant
owed him for some stereo equipment.  Spates further testified
that A-Shay attempted to sell more electronic equipment and a gun
to defendant but no sale was made.

By stipulation, Raymond G. Lenz, a criminologist at the
police department, testified that some hair samples recovered at
the crime scene were consistent with Tillman and Bell.  None of
the hair samples matched the hair of defendant.

Following closing arguments, the trial court found defendant
guilty of murder, aggravated kidnapping and residential burglary.
The trial court acquitted defendant of the charges for aggravated
sexual assault and felony murder.  Thereafter, the trial court
denied defendant's post-trial motions, including a pro se motion
for a new trial alleging ineffective assistance of counsel and a
claim of a speedy trial violation which had been previously heard
and denied before trial.

Following a sentencing hearing and defendant's statement of

13

1-95-0477

allocution, the trial court imposed a sentence of natural life imprisonment for murder.  For aggravated kidnapping and residential burglary, the trial court also imposed 15 years' imprisonment on the aggravated kidnapping and residential burglary charges, to be served concurrently.

Defendant first asserts that he is entitled to discharge because he was not tried within 120 days as required by the Speedy Trial Act (725 ILCS 5/103-5(a) (West 1992)).  Defendant bases his position on the March 18, 1994, file stamp affixed to the letter sent by the clerk of the appellate court to the clerk of the circuit court, remanding defendant's case for retrial.

The State contends that no speedy trial violation occurred because the date stamp affixed to the mandate was March 22, 1994. Furthermore, the State correctly observes that the remand letter was file-stamped both March 18 and March 22, 1994, and the memoranda of orders shows the mandate filed on March 22, 1994.

Section 103-5(a) of the Code of Criminal Procedure provides that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody" unless certain exceptions apply.  725 ILCS 5/103-5(a) (West 1992).

"When a defendant prevails in an Illinois court of review, a mandate issues which, when properly docketed, commences the running of the 120-day term."  People v. Williams, 272 Ill. App. 3d 868, 877 (1995), citing People v. Worley, 45 Ill. 2d 96, 98

14

1-95-0477

(1970).

In People v. Thomas, 149 Ill. App. 3d 1 (1986), the
defendant raised a statutory speedy trial claim on his retrial.
In Thomas, the letter sent from the clerk of the appellate court
to the clerk of the circuit court stated that the mandate in the
case was enclosed and was date-stamped November 2, 1984.
Although the State's Attorney's Office and the State Appellate
Defender's Office received a copy of the letter, neither party
received a copy of the mandate.  The certified mandate was file-
stamped November 9, 1984.  The parties stipulated that the
appellate court mandate was filed with the clerk of the circuit
court on November 9, 1984, i.e., the date the mandate was file-
stamped.  Thomas, 149 Ill. App. 3d at 6.

In the instant case, the letter from the appellate court
clerk's office to the circuit court clerk's office bears two date
stamps, March 18 and 24, 1994.  The mandate itself, however, is
file-stamped March 24, 1994.  The memoranda of orders also
docketed the appellate court mandate on March 22, 1994.

Under Williams, a mandate issues when it is properly
docketed.  In Thomas, the parties correctly agreed that the date
on the mandate should prevail over a date stamped on a letter.
We find that the date stamped on the mandate and on the entry in
the memoranda of orders constitutes the date the appellate court
mandate was filed for the purpose of triggering the computation
of the 120 days for a speedy trial.  Accordingly, defendant's

15

1-95-0477

right to a speedy trial was not violated.

Second, defendant asserts that the circumstantial evidence was insufficient to prove him guilty beyond a reasonable doubt. Defendant argues that, at best, the evidence established that he received items associated with the crimes after the crimes were complete.

It is well established that on a challenge to the sufficiency of the evidence, the relevant inquiry on review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. McDonald, 168 Ill. 2d 420, 443-44 (1995). This same reasonable doubt standard applies in all criminal cases, regardless of whether the evidence is direct or circumstantial. McDonald, 168 Ill. 2d at 444.

Where circumstantial evidence is involved, it is not necessary that the trier of fact be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. McDonald, 168 Ill. 2d at 444, citing People v. Jones, 105 Ill. 2d 342, 350 (1985).

Our review of the record reveals that a rational trier of fact could have found defendant guilty of murder, aggravated kidnapping and residential burglary beyond a reasonable doubt. Defendant's fingerprint was found on a Coke can at the murder scene. The Illinois Supreme Court "has held that a conviction

16

1-95-0477

may be sustained solely on the basis of fingerprint evidence, where a defendant's fingerprints have been found in the immediate vicinity of the crime under such circumstances as to establish beyond a reasonable doubt that they were impressed at the time of the commission of the crime." McDonald, 168 Ill. 2d at 445 (and cases cited therein). Moreover, the State is not required to negate every conceivable possibility that the print was impressed at some time other than during the commission of the offense and attendant circumstances can support the inference that the print was made at the time of the crime. McDonald, 168 Ill. 2d at 446. In the present case, the murder scene was a vacant apartment which contained nothing more than items belonging to the victim, a wet towel in the kitchen sink and Coke cans on the kitchen counter.

The record further reveals that defendant possessed the gun used to shoot the victim in the head. Both Coker and Flowers testified that when they obtained the gun from defendant, defendant warned them that the gun was "hot" and they could "catch a case" if found with the gun. In addition, the record is replete with evidence and testimony that defendant was in possession of the victim's property. We hold that the evidence amply demonstrates that defendant was proven guilty beyond a reasonable doubt.

Third, defendant asserts that the trial court's refusal to admit a statement by codefendant Steven Bell constituted

17

1-95-0477

prejudicial error.  Defendant argues that Bell's statement was sufficiently reliable to warrant admission as a statement against penal interest.  Defendant's position at trial was that Tillman and Bell committed the crimes alone.

The State contends that the trial court properly excluded the extrajudicial statement by Bell as unreliable.  In the alternative, the State argues that even if the statement should have been admitted, the error was harmless.

The oral statements at issue were given by Bell at the police station to a felony review prosecutor, Timothy Frenzer, who interviewed Bell on July 22 and 23, 1986.  At defendant's first trial, Bell's statements were introduced through the testimony of Assistant State's Attorney Frenzer.  In these statements, Bell initially denied any knowledge about the victim's death but later implicated himself.  Bell stated that on July 20, he had been painting apartments with Tillman when Tillman forced the victim into the elevator on the fifth floor.  Bell assisted Tillman in bringing the victim to the seventh floor apartment and tying her to the radiator.  Bell later added that he was present when the victim's underpants were pulled down and her top pulled up.  Bell claimed that he then left the apartment, did not sexually assault the victim, and did not know what happened after he left.

Generally, an unsworn extrajudicial statement by a declarant who claims that he, and not the defendant on trial, committed the

18

1-95-0477

crime is not admissible as hearsay even though the declaration is against his penal interest. People v. House, 141 Ill. 2d 323, 389-90 (1990); People v. Swaggirt, 282 Ill. App. 3d 692, 699 (1996). An exception to the hearsay rule, however, allows the admission of such statements where the statements against penal interest contain sufficient indicia of reliability so as to be rendered trustworthy. People v. Radovick, 275 Ill. App. 3d 809, 818 (1995), citing Chambers v. Mississippi, 410 U.S. 284, 301, 35 L. Ed. 2d 297, 312, 93 S. Ct. 1038, 1048 (1973).

To assist in assessing whether or not this hearsay exception should be applied, the Supreme Court in Chambers provided four guidelines as to whether (1) the statement was made spontaneously or shortly after the crime to a close acquaintance; (2) the statement was corroborated by other evidence; (3) the declaration was self-incriminating and against the declarant's penal interest; and (4) there was an adequate opportunity for cross-examination of the declarant. Chambers, 410 U.S. at 300-01, 35 L. Ed. 2d at 312, 93 S. Ct. at 1048; Swaggirt, 282 Ill. App. 3d at 700; Radovick, 275 Ill. App. 3d at 818. Although all four of the suggested factors need not be present to find a statement trustworthy, the existence of one or more of the factors does not make a statement necessarily trustworthy for admission. People v. Carson, 238 Ill. App. 3d 457, 463 (1992).

Ultimately, the trial court must determine by the totality of the circumstances whether it considers the statement at issue

19

1-95-0477

to be trustworthy.  <u>Carson</u>, 238 Ill. App. 3d at 463.  As with all evidence, its admission rests within the sound discretion of the trial court and its ruling will not be disturbed on review absent a clear showing of abuse of that discretion.  <u>People v. Thomas</u>, 171 Ill. 2d 207, 218 (1996).

The first factor does not support admission of Bell's statement.  Although Bell's oral statements were given shortly after the crimes, Bell made the declarations to an assistant State's Attorney and such an authority is not considered a close acquaintance.  <u>Swaggirt</u>, 282 Ill. App. 3d at 701, citing <u>Thomas</u>, 171 Ill. 2d at 216.

Regarding the second factor, the State maintains that Bell's statement was not well corroborated because the statements of Bell and Tillman differed as to which person committed the actions.  Defendant, on the other hand, claims that Bell's statement was sufficiently corroborated by physical evidence which found that hair samples at the crime scene were consistent with Bell and Tillman but not with defendant and by the fact that Tillman and Bell only implicated each other and not defendant. Neither Tillman nor Bell, however, were asked about defendant or any other person who may have been involved in the murder.  In fact, Bell maintained that he left the seventh floor apartment after the victim was tied to the radiator and claimed no knowledge of the subsequent events.

The third factor is clearly satisfied because Bell conceded

20

1-95-0477

his involvement in the criminal acts.  Bell admitted helping
Tillman bring the victim to the seventh floor apartment and
restraining her to the radiator.

The fourth factor is clearly not satisfied because there was
no opportunity for adequate cross-examination of Bell since he
was not called as a witness.  Moreover, Bell's statement was not
made under oath and was not part of the adversarial trial
process.  Thomas, 171 Ill. 2d at 218 (a defendant's court-
reported statement did not provide the State with an adequate
opportunity for cross-examination where it was not made under
oath and was not part of the adversarial trial process).

In light of the four factors considered for the admission of
an extrajudicial statement, we find that the trial court did not
abuse its discretion in denying the admission of Bell's
statement.  Even assuming that the exclusion of Bell's statement
was improper, any error was harmless because it would not have
affected the outcome.  See Thomas, 171 Ill. 2d at 218-19.  The
trier of fact heard the testimony of police detective John
Yucaitis regarding Tillman's statement in which both Tillman and
Bell were implicated in the crimes while defendant was not
mentioned.  As argued by defendant, the critical question raised
in his defense was whether Tillman and Bell committed the crime
alone.  Tillman's statement addressed that exact issue and the
admission of Bell's statement could be considered merely
collateral and cumulative.

21

1-95-0477

Fourth, defendant asserts that the trial court erred in denying his pro se post-trial allegations of ineffective assistance of counsel without making the required inquiry of trial counsel. Defendant emphasizes that he is not contending that he was entitled to an evidentiary hearing or the appointment of new counsel. Defendant only maintains that he is entitled to a remand for the limited purpose of making an inquiry into his claims of ineffective assistance of counsel. We agree.

In the present case, several post-trial motions were filed. Defense counsel filed a motion for judgment of acquittal or, alternatively, motion for a new trial on August 18, 1994. On August 24, 1994, defendant filed three pro se motions: (1) motion for general finding, (2) motion in arrest of judgment; and (3) motion for new trial. Defendant's pro se motion for a new trial included an allegation that "defense counsel was ineffective in the presentation and preparation for trial." Defendant then enumerated seven contentions to support his claim, including the failure to locate and call certain witnesses and the failure to present his alibi defense.

At the post-trial proceedings on October 12, 1994, the trial court directed that defense counsel would argue all the motions with one exception. The trial court allowed defendant himself to argue his claim of ineffective assistance of counsel. After defendant argued, the following exchange occurred:

"THE COURT: Thank you, Mr. Trotter. Miss Danahy

22

1-95-0477

[Assistant Public Defender], are you going to be prepared to present the arguments for the motion for new trial?

MS. DANAHY:  I believe he just argued his motion for a new trial as opposed to my motion for a new trial.  That was the one that indicated - -

THE COURT:  I allowed Mr. Trotter a little more latitude.

MS. DANAHY:  Judge, if you're asking me if I'm responding to it - -

THE COURT:  No, no.  You don't have to respond to it. Are you prepared to go forward with your motion?

MS. DANAHY:  With my motion and with his additional motion.

THE COURT:  YES."

At that time, defense counsel argued the remaining motions and the trial court denied the post-trial motions.

The trial court erred in believing that defense counsel did not have to respond to defendant's claims of ineffective assistance of counsel or explain the alleged ineffective assistance claims.  When a defendant makes a post-trial claim of ineffective assistance of counsel "there should be some interchange between the trial court and the defendant's trial counsel to explain complained-of possible neglect." People v. Parsons, 222 Ill. App. 3d 823, 830 (1991), relying on People v. Nitz, 143 Ill. 2d 82 (1991) and People v. Jackson, 131 Ill. App.

23

1-95-0477

3d 128 (1985) (cited with approval in <u>Nitz</u>).  The Illinois

Supreme Court's decision in <u>Nitz</u> mandates that "where a defendant

asserts that his counsel was ineffective, the court must explore,

at least to some minimal degree, the substance of that motion

before it may be dismissed." <u>People v. Levesque</u>, 256 Ill. App.

3d 639, 647 (1993) (the case was remanded for a <u>Nitz</u> violation

where no discussions were had regarding the allegations made in

the defendant's motion).

Where the trial judge denied, without any inquiry at all, a

defendant's <u>pro se</u> motion for a new trial alleging ineffective

assistance of counsel, the Illinois Supreme Court held that "the

defendant's motion was precipitously and prematurely denied" and

remanded the cause to the trial court for further post-trial

proceedings. <u>People v. Robinson</u>, 157 Ill. 2d 68, 86 (1993).

On remand, there is no need to hold a full evidentiary

hearing or to appoint new counsel on the issue of the trial

counsel's incompetence. <u>Parsons</u>, 222 Ill. App. 3d at 831, appeal

after remand 261 Ill. App. 3d 663 (1994).  The proceedings on

remand require only the interchange between the trial court and

the defense counsel regarding the defendant's claims of

ineffective assistance of counsel, such as defense counsel's

reason for not calling a particular witness. <u>Parsons</u>, 222 Ill.

App. 3d at 831.  Defense "counsel may simply answer questions and

explain the facts and circumstances surrounding matters which are

alleged by his client to demonstrate that he was not adequately

24

1-95-0477

represented at trial." <u>Jackson</u>, 131 Ill. App. 3d at 139.
Accordingly, we remand the case for the limited purpose of an
inquiry into defendant's <u>pro</u> <u>se</u> claims of ineffective assistance
of counsel.

Lastly, the parties agree that this court should amend the
sentencing order to clearly reflect only one conviction for
murder because this case involves only one murder victim. <u>People</u>
<u>v. Redmond</u>, 265 Ill. App. 3d 292 (1994).

Defendant was indicted and found guilty of two counts of
murder under two different subsections for first degree murder.
Ill. Rev. Stat. 1985, ch. 38, sec. 9-1(a)(1),(2) (now codified at
720 ILCS 5/9-1(a)(1),(2) (West 1993).  The record reveals that
the trial court intended to merge the two counts and enter
sentence on only one murder count.  Remandment being unnecessary
to clarify an order, we amend the mittimus to reflect defendant's
conviction for only one count of murder.

For all the foregoing reasons, defendant's convictions and
sentences are affirmed.  In addition, the common law record is
amended to reflect one murder conviction.  We also remand the
case to the trial court with directions to conduct a limited
hearing to consider the complaints raised in defendant's <u>pro</u> <u>se</u>
post-trial motion alleging ineffective assistance of counsel.

Affirmed and remanded with directions.

GREIMAN, P.J., with ZWICK and QUINN, J.J., concurring.

25

APPENDIX B

Chicago, Illinois  60601

**ORIGINAL**
COURT COPY
DO NOT REMOVE

03/16/94

Honorable Aurelia Pucinski
Circuit Court of Cook County
Chicago, Illinois

Re: People v. Trotter, Clarence
**Appellate Court No.: 1-88-3793**
Trial Court No. 8610969

Dear Ms. Pucinski:

Attached is the Mandate of the Appellate Court in the above entitled cause.

We are sending the attorneys of record a copy of this letter to inform them that the mandate of the Appellate Court has been filed with you.

Gilbert S. Marchman
Clerk of the Appellate Court
First District, Illinois

Attachment

**FILED**

MAR 22 1994

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

cc: All attorneys of record

Hon. David Cerda, Justice

Hon. John P. Tully, Justice

Hon. Alan J. Greiman, Justice

___ J. Hartman, Clerk                     Michael F. Sheahan, Sheriff

Fifteenth day of September, 1993, the Appellate Court, First
___, issued the following judgment:

88-3793

__ OF THE STATE OF ILLINOIS,              APPEAL FROM COOK COUNTY
Plaintiff-Appellee,                       Circuit Court No. 3610969

CE TROTTER,
Defendant-Appellant.

FILED

MAR 22 1994

CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

__gment of the Circuit Court of Cook County is REVERSED, REMANDED.

__ of the Appellate Court, in and for the First District of the State
__nois, and the keeper of the Records, Files and Seal thereof, __
__ that the foregoing is a true copy of the final order of said
__te Court in the above entitled cause of record in my office.

IN TESTIMONY WHEREOF, I have set my hand
and affixed the seal of said Appellate
Court, at Chicago, this Sixteenth day
of March, 1994.

Clerk of the Appellate Court
First District, Illinois

**APPRENDIX C**

June 8, 1997

TO: Clerk Jeffrey D. Atkins
United States Supreme Court
WASHINGTON, DC 20543
No. 96-8864

Mr. Clarence Trotter
#9738710 Div 1 ABO
2600 So California Ave
Chicago, Illinois 60608

Dear Clerk Atkins:

    My petition for leave of certiorari was docketed May 2, 1997. On June 5, 1997 I was writted and remanded to the custody of Cook County Department of Corrections on process of the Court. As far as I know my next court date is June 17, 1997 and I'm not sure the court shall hold or complete the hearing on that date, therefore, I may continue to be housed here until that proceeding is completed. I'm just notifying your office and requesting a Statute up date on my case.

    I'm sorry for the delay. I was not able to get this letter to your office any sooner.

Sincerely,
Mr. Clarence Trotter

CC:

**APPRENDIX D**

IN THE
CIRCUIT OF COOK COUNTY
CRIMINAL DIVISION COUNTY DEPARTMENT

PEOPLE OF THE STATE OF ILLINOIS,        )
       Plaintiff-Respondent.        )        NO. 8610969
                      )
       -vs-        )
CLARENCE TROTTER,        )
       Defendant-Petitioner.        )

## NOTICE OF SERVICE

Now comes Plaintiff-Respondent Clarence Trotter, Pro Se litigant has served a complete copy of the attached Motion for extension of Time to file postconviction with affidavit and exhibits, upon The Cook County Circuit Court Criminal division at 2600 So. California Ave. Chicago, Illinois 60608. On June , 1997.

Respectfully Submitted,
Mr. Clarence Trotter
#9738710 Iw1 AEO
2600 So. California Ave
Chicago, Illinois 60608
P.O. Box 711 #A63323
Menard, Illinois 62259

OFFICIAL SEAL
EDWARD J LAUDE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 11/18/00

Subscribed and sworn to before
me this _____ 25 _____ day of
_____ June _____ 19 97
Notary Public

# IN THE
## CIRCUIT OF COOK COUNTY
## CRIMINAL DIVISION COUNTY DEPARTMENT

PEOPLE OF THE STATE OF ILLINOIS,  )
               Plaintiff Respondent, )  NO. 86 10969
                                       )
      -VS-  )
                                         )
CLARENCE TROTTER,  )
           Defendant-Petitioner, )

**FILED**

JUL 2 2 1997

AURELIA PUCINSKI
CLERK OF CIRCUIT COURT

## MOTION FOR TRANSCRIPTS AND
## APPOINTMENT OF COUNSEL

Now comes Petitioner Clarence Trotter and respectfully moves This Honorable Court Pursuant To Supreme Court Rules 471, 604, 605, 607 and 608 respectively; For and Order to Produce a Complete Set of Transcripts and Common Law records In the above entitled cause. That This Honorable Court Appoint Counsel to Protect the Petitioner's Rights In Said Cause.

Respectfully Submitted
_Mr. Clarence Trotter_
Mr. Clarence Trotter
#9738710 DIV-1-ABO
2600 So California Ave
Chicago, Illinois 60608

P.O. Box 711 #A63323
Menard, Illinois 62259

STATE OF ILLINOIS )
COUNTY OF COOK ) SS

## AFFIDAVIT CLARENCE TROTTER

Clarence Trotter duly sworn upon oath, deposes and States that the statements and facts related herein are true and Correct in substance and upon personal Knowledge and belief. Affiant hereto below subscribe so being under penalty of perjury.

Affiant is The Petitioner/Defendant accused and Convicted under Criminal Indietment No. I86I0969, who wishs to Process postconviction relief. Affiant is without Counsel and means to obtain same, and to pay Cost of said proceedings.

Affiant has meritatous issues to raise in said Postconviction Petition. That in order for affiant to raise such issues, affiant needs a Copy of The Complete records, transcripts, common Law records, files and exhibits [ listing of exhibits ] filed in Said Cause. That such documents are essential to support Issues affiant wishs to raise in The Postconviction Petition.

Affiant has attempted to obtain a complete Copy of The records in said cause numerous times each year, during Ten and half years of affianTs Conviction and Confinement. That affiant has been unsucessful in obtain said records, transcripts and documents. [ See, attached Exhibits 1 Thru , hereto attached. ] Such records are essential to support affiants Claims and Issues to be

(Att of Trotter)
P. 2.

raised in postconviction Petition and without
such records, transcripts and documents The
affiant will have to forego meritetous post-
conviction issues which shall prove affiant's
actual Innocent and will deny affiant Due
Process and Equal Protection of The law as
well as Procedural due Process of laws.

This motion is timely filed wherein affiant
was convicted July 24, 1994 and sentenced
October 26, 1994. Affiant processed appeal to
The Appellate Court of Illinois which was affirmed
in part and remanded in part, December 31, 1996.
Affiant filed appeal to the Illinois Supreme Court
and was denied leave April 2, 1997. Affiant Then
filed Appeal To The United States Supreme Court
April 29, 1997 which is still pending as of This
writting.

Wherefore, affiant would respectfully find
it essential to have a Copy of appearances of
affiant before The Circuit Court of Cook County
transcripts of August 11, 1986, August 12, 1986,
August 13, 1986 and a Complete Transcript of
all witness who testified on November 18,
1986 before Judge Kenneth Gillis in I86L0969.
A Complete Copy of The Index of all testimony
of witnesses testifing during the hears of
Codefendants' Michael Tillman and Steven

(Aff'ad Trotter)                    P. 3.

Bell in Said Case, A Copy of The Chain
of Custody Sheet of Affiant Involving
Said Case and a Copy of any and all
Consent to Search forms Signed by Mrs.
June Brown and write, Summary and
Oral Statements of Betty Woods, In
order to Prepare Postconviction Petition,
ENDOF AFFIDAVIT.

Respectfully Submitted

Subscribed and SWorn TO
BEFORE ME June 25, 1997

Mr. CLARENCE TROTTER
2600 So. California
Chicago, Illinois 60608
DW 1-A80 #9738710

P.O. Box 711 #A63323
Menard, Illinois 62259

_____
Edward J Laude
NOTARY PUBLIC

OFFICIAL SEAL
EDWARD J LAUDE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 11/18/00

IN THE
CIRCUIT OF COOK COUNTY
CRIMINAL DIVISION COUNTY DEPARTMENT

PEOPLE OF THE STATE OF ILLINOIS,            )
      Plaintiff- Respondent,            )    NO. 8610969
                            )
                            )
      - VS -            )
CLARENCE TROTTER,            )
      Defendant- Petitioner,            )
                            )

## MOTION FOR EXTENSION OF TIME TO FILE POSTCONVICTION

Now comes Petitioner Clarence Trotter, Pro Se litigant and respectfully moves This Honorable Court to grant Petitioner an extension of time to file his Postconviction Petition. In Support of Same The Petitioner Present The hereto Affidavit and Copies of exhibits:

Respectfully Submitted,
Mr. Clarence Trotter
2600 So. California Ave.
Chicago, Illinois 60608
Div 1 - ABO #9738710
P.O. Box 711 #A68323
Menard, Illinois 62259

STATE OF ILLINOIS )
COOK COUNTY ) ss

## AFFIDAVIT CLARENCE TROTTER

Clarence Trotter duly sworn, upon oath deposes and States under penalty of preyury that the statements, facts and substance of the nature of those matters herein related are true and correct to the best of affiant's personal knowledge and belief and affiant hereto subscribe so being hereto below so being.

Affiant is prisoner confined on process of the Circuit Court of Cook County, after conviction and remand and Appeal before the United States Supreme Court in Cause #8610969. That affiant seeks to prosecute Postconviction Petition and has sought numerous times, to obtain a complete copy of the criminal record and criminal files in said cause and has repeatedly been denied copies of such records and criminal files essential to the timely presentation of issues for Postconviction Relief. That affiant's Common Law Records, Street files, Transcripts and records in said cause are incomplete. That affiant must have a complete copy of the records, transcripts and files to support his Postconviction Petition, to obtain Due Process and Equal Protection of the Law, wherein affiant's conviction rest upon sham of court, false Evidence and Misconduct, . . . Affiant Sayth Not.

Respectfully Submitted,
Mr. Clarence Trotter

IN THE CIRCUIT COURT OF COOK COUNTY

COUNTY DEPARTMENT CRIMINAL DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff/Respondant. | ) | |
| VS. | ) | NO._____ |
| | ) | |
| CLARENCE TROTTER, | ) | |
| Defendant/Petitioner. | ) | |

MOTION TO COMPEL PRODUCTION OF DOCUMENTS

REQUESTED IN SUPREME COURT RULE 471

MOTION ALREADY ON FILE

Now comes Petitioner Clarence Trotter, pro se litigant, and respectfully moves this Honorable Court to compel the Official Court Reporter Office to provided the Petitioner with a certified copy of his court appearence of August 11,1986 and his Night Bond Court Appearences of August 12,1986 and a copy of His November 18,1986 court appearence, testimony of Frank DeMarco during the hearings of Codefendants' Michael Tillman and Steven Bell in criminal cause number I8610969.

That such transcripts are essential to the Petitioner's issues on postconviction relief petition. That The prosecution office has circumvented the Petitioner from recieving a true copy of those stated transcripts. That the transcripts where ordered to be provided to the Petitioner numerous times and the records has not been so provided to Petitioner. That the records are not costly.

Wherefore, Petitioner Clarence Trotter Prays This Honorable Court Shall Grant this motion ordering the official court reporters office to provider said transcripts to Petitioner without cost as soon as possible. That such records be directly given to Petitioner and not the clerk of the court's office for forwarding.

Respectfully Submitted,

Clarence Trotter

STATE OF ILLINOIS)
                       SS
COOK    COUNTY    )

### AFFIDAVIT CLARENCE TROTTER

Affiant Clarence Trotter duly deposes upon oath, under penalty of perjury that

the statements and facts alleged in the motion to compel hereto attached are true

and correct in substance and belief and affiant hereto subscribes so being under

penalty of perjury.

Respectfully Submitted,

*Clarence Trotter*

STATE OF ILLINOIS )
                          SS
COUNTY  OF  COOK  )


NOTICE AND PROOF OF SERVICE

I Clarence Trotter duly deposes that I have personal placed in the U.S.

Mail a copy of the hereto attached documents in the U.S. Mail at The Cook

County Jail on ___*July 10, 1998*___ ,1998 properly postage paid.

*Clarence Trotter*

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT     CRIMINAL DIVISION

| | |
|---|---|
| CLARENCE TROTTER | ) |
| Petitioner. | ) |
| | ) |
| VS. | ) |
| | ) NO. |
| PEOPLE OF THE STATE OF ILLINOIS, | ) |
| Respondant. | ) |

MOTION TO COMPEL PRODUCTION

OF COMMON LAW RECORDS AND

TRANSCRIPTS REQUESTED IN

SUPREME COURT RULE 471

MOTION ALREADY ON FILE

Now comes Petitioner Trotter, pro se Litigant moving this Honorable Court to compel the court reporter's office to produced the transcripts requested in the Petitioner Trotter's Rule 471 motion.

That Petitioner cannot complete and file his postconviction petition where he is being denied evidence which shall vindicate him of the offense of murder and related offenses in Cause Number I8610969. Petitioner merely seeks records that are already a part of the files and records during the Petitioner's and Codefendants' first trial proceedings and such records are not numerous pages or costly. That the court reports office has not given any rationale why such records have not been returned over to the petitioner.

Wherefore, Petitioner Prays that this Honorable Court shall grant this motion.

Respectfully Submitted,

Clarence Trotter
Petitioner Clarence Trotter

STATE OF ILLINOIS )
                              SS
COUNTY OF COOK      )

### AFFIDAVIT OF CLARENCE TROTTER

I clarence Trotter duly deposes, upon oath and under penalty of prejury that the statements and facts herein are true and correct to the best of affiant's knowledge and belief and that affiant has subscribed hereto below so stating.

Affiant has attempted to obtain copies of missing transcripts of Frank DeMarco testimony during the motion to suppress hearing of Codefendants' Michael Tillman and Steven Bell and has not been able to obtain said transcript from the court reporter office. Affiant has also attempted to obtain copies of the transcripts of affaint's appearence in court before Judge BaStone on August 11, 1986 from the court reporters office and has not been able to otain same. That affaint has aslo attempted to recieve a copy of the transcript of affaint's appearence at br.80 for bond and has not been able to obtain same from the court reproters office. That affaint has filed a motion under Supreme Court Rule 471 seeking these transcripts and that such transcripts has not been forward to affaint. That the court reporter office has not informed affaint whether these records shall be turned over to affaint or not. That affaint needs these records to litigate postconviction issues.

Wherefore, Affaint Sayee Not.

Respectfully Submitted,

*Clarence Trotter*
AFFAINT CLARENCE TROTTER PRO SE

NOTARY PUBLIC HERE BELOW

No. 1-98-2424

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from The Circuit Court |
| Plaintiff-Appellee, ) | of Cook County. |
| -vs- ) | |
| CLARENCE TROTTER, Pro Se. ) | VINCENT GAUGHAN |
| Defendant-Appellant. ) | Presiding Judge |

## PETITION FOR REHEARING

TO THE HONORABLE JUSTICES OF THE APPELLATE COURT;
May It Please the Court;

This Court remaned Mr. Trotter's case for 'Continuation of Post-trial' Proceedings, where after Conviction and before Sentencing Mr. Trotter filed a Pro Se motion alleging trial Counsel Provided ineffective assistance of Counsel, and where upon the trial Court failed to Make an inquiry into Mr. Trotter's Claims. [People v. Trotter, No. 1-95-0477 Unpublished Order at 25] The Trial Court held the hearing April 30, 1998. Wherein The Trial Court never questioned defense Counsel about any issue or Claim raised in the Pro Se motion. [See Allegations of motion and hearing transcript.] Thereafter the trial Court denied the motion. This Appeal Was taken Where upon This Court Affirmed The Circuit Court's finding. [Trotter, No. 1-98-2424; Unpublished Order at 6]

The rationale of this Court is it remanded for 'Further post-trial Proceedings, but Concluded that it was not necessary to hold a full evidentiary hearing, Trotter, No. 1-95-0477 at 24,'. However, The Trial Court did not hold an limited hearing Concerning the alleged ineffective Conduct Mr. Trotter Complained of. If That Court had an Evidentiary Hearing Would have been Warranted, where the Complained of Conduct Were Defense Counsel's failure to investigate falsification of fingerprint evidence used to Convict Mr. Trotter, The failure to investigate the prosecution's knowing use of false fingerprint evidence and testimony, The

failure to obtain transcript wherein the Mobile Crime lab Technican Frank DeMarco testified he did not discover an print on the alleged gas can, and the failure to present Alibi witnesses which would have directly contradicted the prosecution's case against Mr. Trotter. This Court's oppion indicates that the Trial Court held 'a very thorough investigation into each allegation raised by defendant. [Trotter, 1-98-2424 at 6] However, the hearing transcript and allegations' raised in the Pro Se motion shows the Trial Court never even questioned counsel concerning any one allegation raised in the pro se motion. [See Pro Se Motion allegation sections' at page 4, 5, and 6.] Also [See hearing transcript.]

This Court also noted the Trial Court allowed Mr. Trotter to present an evidence report, which this Court stated 'the State examined ... and conclude ... it did not exculpate defendant, as defendant's trial counsel had also concluded.' [Trotter, at 4.] However, the record does not support such an factual basec. No where in the hearing record, nor during any period in this case has Ms. Danahy been asked or she indicated to a Court any thing concerning the said evidence report. The prosecution during the limited hearing did not conclude the report did not exculpate Mr. Trotter. It appears during the hearing the prosecutor was confused about what the report actually stated and showed. The Trial Court didn't even question Ms. Danahy about what she knew the report to state and show. When the prosecution completed its analysis and misinformed the Court of the evidentiary matters of the report it was Mr. Trotter who explained to the Court the correctness of what the evidence report showed. Upon this disputed fact itself an evidentiary hearing should have been ordered by the Court to test the truth of the Matter. It is the fingerprint Evidence which sustains Mr. Trotter's conviction. It also may be noted that this Court did not even consider the fact that the Trial Court failed to even question Ms. Danahy according Subparagraph 2 of Paragraph 2 [A-12] The 'failure to locate records of the Circuit Court and Cook County Jail which Shall prove issue in dispute, which would change the outcome of the Trial.' [See Pro Se Motion and hearing transcript A-12, where the Court calls this paragraph and conclusion and

2.

Moves on Without an inquiry. The Court's records shows Mr. DeMarco testified November 18, 1986 and the Court Reporter's Transcript shows that his testimony denied discovering a print on the alleged Pop can. Records of The Court and Cook County Jail also shows Mr. Trotter was before That Court that date Mr. DeMarco testified. Also other records of The Court and Court Reporter's transcripts shows August 11, 1986 Mr. Trotter was brought to Court in handcuffs and ordered released. However, he was not so released but taken back to Area Two Station house wherein he and numerous other Witnesses' and suspects alleged they were Physically and mentally abused into providing information to Area Two Detectives. this evidence would not only have contradicted the State's evidence that Mr. Trotter had to be at the crime scene because his fingerprint was found on the Pop can, but also would have Supported The prosecution knowingly presented false evidence and perjured testimony during Motion to Quash Arrest hearing wherein all Detectives Claimed Mr. Trotter was willingly taken to Area Two and remained there and was not under arrest until late August 11, 1986. Moreover, The records would have impeached and Contradicted the prosecution's whole case at trial and most likely changed the out-come to not guilty,

Wherefore This Court Should reconsider the remand of Mr. Trotter's Case for an full Evidentiary Hearing at least on the issues of the false fingerprint Evidence, Knowing use of Perjury testimony and denial of a fair Arrest hearing,

SUBSCRIBED AND AFFIRMED TO
BEFORE ME JANUARY  , 2000

Respectfully, Submitted
Mr. Clarence Trotter
Pro Se Mr. CLARENCE TROTTER
BOX 089002 #9738710
Chicago, Illinois 60608

not available

NOTARY PUBLIC

3.

STATE OF ILLINOIS )
COOK COUNTY )SS

AFFIDAVIT

Clarence Trotter, duly Sworn upon oath, says he is the Affiant herein and that the facts and Statements present in the attached 'Petition for Rehearing' are true and correct in Substance, belief and Personal Knowledge of Affiant. Wherefore, Affiant Sign such as So being under penalty of Perjury.

Affiant also has mailed a true and correct Copy of the 'Petition for Rehearing' and this Attached Affidavit upon the States Attorney office on January , 2000,

Respecifully Submitted,
_The Clarence Trotter_
Box 089002 #9738710
Chicago, IL 60608

AFFIRMED TO BEFORE ME AND
SUBSCRIBE JANUARY , 2000

N. Available

NOTARY PUBLIC

POSTCONVICTION SECTION ,
SUPERVISOR
2240 W. Ogdon Ave. 2nd Fl.
Chicago, Illinois 60612

Mr. Clarence Trotter
P.O. Box 089002 #9738710
Chicago, Illinois 60608

April 17, 2000

Dear Supervisor:

This brief letter is to address my **postconviction proceedings and your office's representation of me defore the Circuit Court of Cook County,** in which I filed an Supreme Court Rule 471 motion seeking trancripts to complete my postconviction with and the court Apointed Attorney B. Maxs to presented me thereon. See Case No. I86CR10969.

I have been informed that Attorney Maxs no longer works for your office, However, he has never indicated such to me and I have never been informed that new counsel has been appointed by the court or your office. Also I have not recieved response from Mr. Maxs during the recent letters I've forwarded him addressing my concerns. The last letter I sent to him at your address was returned to sender. Then I forwarded you an letter and recieved no reply and this is the third letter addresing the same matters to you which I'm praying you shall recieve and reply to. I would like to know if your office is still representing my interests or has someone else been appointed. If so whom may that person be, if not what is the status of my case with your office.

Your acknowledgment is truely appreicated.

Sincerely Yours,

*M. Clarence Trotter*

SUBSCRIBED AND AFFIRMED TO BEFORE
ME THIS DATE 17th, OF APRIL    2000

OFFICIAL SEAL
CARMELLA K RICHARDSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/21/02

**APPRENDIX E**



office of the
# COOK COUNTY PUBLIC DEFENDER

POST CONVICTION UNIT • 69 WEST WASHINGTON • 17TH FLOOR • CHICAGO, IL 60602 • (312) 603-8300

**Rita A. Fry • Public Defender**

May 18, 2000
Clarence Trotter
PO Box 089002
#9738710
Chicago IL 60608

### RE: YOUR LETTER TO RITA A. FRY

Dear Mr. Trotter:

    I am the new supervisor of the post conviction unit and your inquiry letter about your case has been forwarded to me by Cook County Public Defender Rita A. Fry for a response. I apologize that our office has not kept you better informed about the status of your case. After reviewing your letter, I have examined your file and spoken with both Brendan Max and Assistant Appellate Defender James Chadd of the Office of the State Appellate Defender.

    Contrary to the information you have received from another inmate, Brendan Max still works for the Cook County Public Defenders Office. Apparently, when he transferred out of our unit last autumn, your case was supposed to be reassigned to another attorney but that was not done. I am assigning your case **today** to Assistant Public Defender Celia Kilpatrick. You can write her at this office. Our records show your next court date is July 12, 2000, before Judge Vincent Gaughan. An attorney from our unit has been appearing at court to obtain continuances.

    Concerning the transcripts recently prepared, James Chadd confirmed to me on May 15, 2000, that he picked up those transcripts and common law materials. He advised me that they related to testimony of Frank DeMarco in your co-defendants cases concerning a coke can. We will arrange to obtain those transcripts shortly and can prepare copies for you.

    As far as I can figure out, you essentially filed a motion for transcripts and appointment of counsel; but Judge Gaughan treated your filing as an actual post conviction petition. Normally, our unit has only been appointed once an actual petition is filed. I am sure you will find Ms. Kilpatrick will diligently handle your case.

Very truly yours,

Harold J. Winston
Assistant Public Defender

cc: Rita A. Fry

Printed on Recycled Paper

APPRENDIX F

Ms. Celia Kilpatrick                          April 11,2001
69 West Washington 17th Floor
Chicago, Illinois 60602                  Mr. Trotter, Clarence
                                         P.O. Box 089002 #9738710
                                         Chicago, Illinois 60608


Dear Ms. Kilpatrick:

I recieved you April 5, 2001 letter yesterday and felt I would write

in reply and try to reach you by phone later today. I'm sorry about the

petition not being completed as planned. But things have gone wronge often.

Nevertheless, I'm working on it and I'm interested in the progress you have

made according obtaining DeMarco's testimony of November 18,1986.

I see that you are staring to investigate Coker's false testimony

according a deal. However, I believe that I have enough to support that

was the case. I'm reaaly interested in what is going on according the **two**

**missing transcripts: DeMarco's November 18th; and My court appearence of**

**August 11th.** Official copies of both are essential.

I'll be looking forward to seeing you the week of the 23rd. Until then.

                                         Sincerely,

                                         Mr. Clarence Trotter


cc:

June 6, 2001

Ms. Celia Kilpatrick                    Clarence Trotter
69 West Washington 17th Flr.            P.O. Box 089002 #9738710
Chicago, Illinois 60602                 Chicago, Illinois 60608


Dear Ms. Kilpatrick:

This is a copy of the complete petition and exhibits. There are two small changes from the petition that I gave you according the exhibits. (See Pages 15 botton where exhibit number should reflect 11 and page 25 where exhibit according Mrs. June Brown's consent to search form should reflect exhibit number 27.) Other than that the one I gave you is the same as this one.

Now You may forward a copy to the court or have me file a copy. What ever you decided to do please write and inform me at once so I'll know what is being done.

If there is any thing which you wish to discuss with me according the petition please get with me according that matter by letter or visitation.

I shall be looking forward to your acknowledgement according the merit of the allegations of the petittion and exhibits.

I am also concerned about the November 18,1986 transcript and the August 11,1986 transcripts which has not been provided since the filing of my Supreme Court Rule 471 motion. Your assistance with obtaining a court order from the court to have the court reporters' office provide the transcripts (ceritified copies or ceritification that they do not have either is essential within the next few weeks... due to my next filings in federal court.)

I would appreicate your assistance with these mattters right away because it has been four (4) years since my request to the court for the transcripts to be provided and they have not been so provided.

June  6, 2001
Kilpatrick.


    Once again thank you for your time and consideration and acknowledg-

ment is rgards to this matter.

                                Sincerely Yours,


                                  MR. CLARENCE TROTTER
                                  P.O. BOX 089002 #9738710
                                  CHICAGO, ILLINOIS 60608



## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT - CRIMINAL DIVISION

PEOPLE OF THE     )
STATE OF ILLINOIS    )
   v.        )  NO. 86 - 10969
Clarence Trotter     )
           )
           )

## MOTION FOR CONTINUANCE

   This cause coming to be heard for Post-Conviction, previously having been set for status on 13 June 2001. It is hereby requested by the Defense that a continuance be granted.

**AFFIDAVIT IN SUPPORT OF THE DEFENDANT'S MOTION FOR CONTINUANCE**

   I, Celia Kilpatrick, attorney representing Clarence Trotter, on oath state that a continuance is necessary for this cause because of the following reasons:

   I need to review my client's pro se petition, all the exhibits, and investigate his claims. I received the pro se petition in its entirety on 12 June 2001 and I am filing it today. I still need to acquire the full transcript for Michael Tillman, as I only have one volume and need to review the testimony of the Motion to Suppress. I need to finish up the investigation regarding a state witness Charles Coker. I am seeking a general status date. Appears that client may have an Apprendi claim.

   I certify the foregoing is true to the best of my knowledge.

**SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ day of _____ 2000.**

---
         Notary Public

NOTICE

The type of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

THIRD DIVISION
DECEMBER 20, 2006

No. 1-04-3492

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 86 CR 10969 |
| | ) | |
| CLARENCE TROTTER, | ) | Honorable Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Defendant Clarence Trotter appeals from an order of the circuit court of Cook County granting the State's motion to dismiss his petition for relief under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2004)).

This court previously affirmed defendant's convictions and sentences for first degree murder, aggravated kidnaping, and residential burglary, but remanded the cause for a Krankel hearing (People v. Krankel, 102 Ill. 2d 181 (1984)) on defendant's allegations of ineffective assistance of trial counsel. People v. Trotter, No. 1-95-0477 (1996) (unpublished order under Supreme Court Rule 23). Following remand, we affirmed the denial of defendant's pro se motion for a new trial alleging ineffective assistance of trial counsel. People v. Trotter, No. 1-98-2424 (2000) (unpublished order under Supreme

1-04-3492

Court Rule 23).  Thereafter, defendant filed a series of
petitions, all of which were dismissed by the circuit court.

In 2004, defendant filed the subject section 2-1401 petition
alleging error in the dismissal of his prior petitions.  The
State filed a motion to dismiss which the circuit court granted
after a hearing.  The court found essentially, that defendant had
not stated a proper claim for relief from judgment.

Defendant appealed, and the State Appellate Defender, who
was appointed to represent him, has now filed a motion for leave
to withdraw based on her conclusion that an appeal in this cause
would be frivolous.  The motion was made pursuant to Pennsylvania
v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990
(1987), and is accompanied by a memorandum.

In compliance with the mandate of Pennsylvania v. Finley, we
have carefully reviewed the record in this case and the materials
filed by counsel and have found no issues of arguable merit to be
asserted on appeal.  We therefore grant the motion of the State
Appellate Defender for leave to withdraw as counsel and affirm
the judgment of the circuit court of Cook County.

Affirmed.

GREIMAN, J., with THEIS, P.J., and KARNEZIS, J., CONCURRING.

## OFFICE OF THE CIRCUIT COURT CLERKS OF COOK COUNTY
### 2650 S, CALIFORNIA – 5TH FLOOR
### CHICAGO ILLINOIS 60608
### (773) 869-3143

DATE:  MARCH 16,2004

|                                         |     |                          |
|-----------------------------------------|-----|--------------------------|
| **PETITIONER**                          | )   |                          |
|                                         | )   |                          |
| **VS.**                                 | )   |                          |
|                                         | )   |                          |
| **THE PEOPLE OF THE STATE OF ILLINOIS** | )   | **CASE NO: 86CR10969–01** |
| **RESPONDENT**                          | )   |                          |

TO:  CLARENCE TROTTER A–63323

ADDRESS:  P.O. BOX 711

CITY & STATE:  MENARD,ILLINOIS 62259

### NOTICE

Pursuant to Illinois Supreme Court Rule 651, as Amended and Adopted on January 25, 1996, and effective the same day to read as follows:

"You are hereby notified that on MARCH 9,2004  the court entered an order, a copy of which is enclosed herewith. You have a right to appeal. In the case of an appeal from a post-conviction proceeding involving a judgment imposing a sentence of death, the appeal is to the Illinois Supreme Court. In all other cases, the appeal is to the Illinois Appellate Court in the district in which the circuit court is located. If you are indigent, you have a right to a transcript of the record of the post-conviction proceedings and to the appointment of counsel on appeal, both without cost to you. To preserve your right to appeal you must file a notice of appeal in the trial court within 30 days from the date the order was entered."

_____
**Clerk of the Circuit Court**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
                                )
                                )        CASE NO.   86CR10969–01
                   VS.          )
      CLARENCE TROTTER          )
_____)

### CERTIFIED REPORT OF DISPOSITION

The following disposition was rendered before the Honorable Judge

VINCENT GAUGHAN ON MARCH 9,2004 POST CONVICTION PETITION DISMISSED.

I hereby certify that the foregoing has been entered of record on the above captioned case.

Date:  MARCH 16,2004

_____, Clerk of the Circuit Court

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILE/POSTCONVICTION3.WP

CIRCUIT COURT OF COOK
COUNTY CRIMINAL DIVISION

**FILED**

JUL 18 1994

AURELIA PUCINSKI
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

CLARENCE TROTTER,
    Defendant.            )

)

)

                           ),   NO. 8610969

V.                     )

)

PEOPLE OF STATE OF ILLINOIS.
    Plaintiff.          )

## MOTION TO DISMISS

Now comes Defendant Clarence Trotter, pro se and by Court Appointed Counsel Mary Danahy and respectfully moves this Honorable Court pursuant to S.H.A. ch. 38 103-5 and 114-1(a)(1) to dismiss this cause due to want of prosecution in violation of Illinois Speedy Trial Act.

1. August 10,1986 Defendant Clarence Trotter's domicile was non-consentially warrantlessly searched and property seized therein. Upon his protest he was warrantlessily arrested and held to Area Two Violent crime Station House held,mentally and physically abused then placed on process of the court. Without probable cause.

2. November 18,1988 Defendant Trotter was found guilty of murder etc., during jury trial in this cause and December 23,1988 sentence to Natural Life and 15 years.

3. September 16,1993 The Illinois Appellate Court reversed conviction and remanded with direction for new trial: The state appealed.

4. February 2, 1994 The Illinois Supreme Court denied the state's leave of appeal and gave the state notice that their mandate would issue February 24,1994 to the Appellate Court. The state elected not to appeal or stay the issuence of that mandate.

5. February 24,1994 The Supreme Court mandate issued to the Appellate Court and March 16,1994 the Illinois Appellate Court issued the mandate to the Circuit Court of Cook County.

6. April 29,1994 Defendant Trotter appeared in court answered ready for trial and cause was continued motion state.

7. May 3, 1994 Defendant Trotter appeared in court and aswered ready for trial and cuase was continued motion state.

8. May 20,1994 defendant Trotter appeared in court and asnwered ready for trial and cause was continued motion state.

9. June 24,1994 Defendnat Trotter appeared in court and answered ready for trial and cuase was continued motion state.

10. July 1,1994 the defendant was not called to court, but his attorney appeared in court and demanded trial and cause was continued.

11. July 8,1994 Defendant Trotter appeared in court and demanded trial and cause was continued motion state.

12. July 18,1994 Defendant Trotter appeared in court and present motion to dismiss this cause for violation of the speedy trial act of 120 days.

Wherefore, the defendant Trotter respectfully moves this court to dismiss cause no. 8610969 and discharge him according to the law.

Respectfully Submitted.

MEMORANDUM OF LAW WITH
SUPPORTING ARGUEMENT AND EXHIBITS

Defendants' in criminal cases have a constitutional right to a speedy trial
(Ill.Const. 1970, art.1,Sec.8), but this constitutional right "cannot
be defined in trems of an absolute or precise standard of time, within
which an accused must be given trial." People v. Henry (1970), 47 Ill.
2d 312,316,265 N.E.2d 876. Thus, the Speedy trial statute (Now codif-
ied at Ill. Rev. Stat. 1979,ch.38, par.103-5) was enacted to give some
concrete meaning to the right to speedy trial. People v. Meisionhelfer
(1942),381 Ill. 378,385,45 N,E.2d 678.Also see People v. Rhoads (1984)
110 Ill.App.3d.1107,66 Ill. Dec.747, 443 N.E.2d673. If a defendant is
not brought to trial within the speedy trial period, and the matter
is properly raised before the trial court, the statute provides that
the defendant "Shall be discharged from custody..." (Ill. Rev. Stat.
1979.ch.38. par.103-5(d).) The trial court is specifically authorized
to dismiss the charges if the speedy trial provision is violated.
(Ill.Rev.Stat. 1979,ch.38,par.114-1(a)(1); People v. Rermolds (1982).
92 Ill.2d 101,104,65 Ill.Dec17, 440 N.E.2d 872.) And if a defendant is
entitled to be discharged under the speedy trial act, the prosecution
cannot evade the mandate of this provision by dropping the charge and
filing a new charge based on the same offense. People v. Ex rel. Nagel
v. Heider (1907), 225 Ill.347,350, 80 N.E. 291; Newlin v. People (1906)
221 Ill.166,175, 27 N.E. 529. The Cook County Circuit Court retained
jurisdiction in this cause March 16,1994 the date the mandate was filed
(See, exhibit #1) People v. Adams, 36 Ill.2d 492,224 N.E.2d 252, People
v. Dodd (1974), 58 Ill.2d 53, 317 N.E. 2d 28; People v. Worley (1970),
45 Ill,2d,96,256 N.E.2d 751; People v. Baskin (1967), 38 Ill.2d 141,230
N.E.2d 208; People v. Nolon (1981), 102 Ill.App.3d 895, 58 Ill. Dec.
408,430 N.E.2d345; People v, Gathings (1984) 128 Ill.App.3d475, 83 ILl.
Dec. 840,470 N.E.2d1260.

Wherefore, defendant respectfully request to be discharged in
cause #8610969 due to the speedy trial act.

*Clarence Tratton*

## CIRCUIT COURT OF COOK COUNTY
## OFFICIAL COURT REPORTERS

32 W. Randolph Street
Room 1000
Chicago, Illinois  60601

<u>FIRST MUNICIPAL DIVISION</u>

Supervisor
Lynn Mangan                              July 2, 1991
(312) 609-3879

Assistant Supervisor
Lois Damitz
(312) 609-3878
Mr. Clarence Trotter
P.O. Box 711
#p63323
Menard, Illinois  62259

Dear Mr. Trotter,

I am in receipt of your second request
for a Report of Proceedings dated May 23, 1991.
Unfortunately, your request still lacks some
necessary information.

In order to process this transcript order, you
must provide me with an order <u>signed by a Judge</u>
indicating that you are indigent; or a deposit in the
previously-mentioned amount.

May I suggest if you are in need of further
assistance or guidance in obtaining these records,
that you contact the Public Defender's Office.
However, please feel free to contact me if you obtain
the necessary documentation or funds for payment.

Very truly yours,

Lynn Mangan

Lynn Mangan

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Cook

DEPARTMENT Criminal

(Municipal)     (Division)     (District)

People of the State of Illinois

v.                                    No.   86-10969

Defendant

Clarence  Trotter     ORDER OF SENTENCE AND COMMITMENT TO
ILLINOIS DEPARTMENT OF CORRECTIONS

Date of Offense:
7-21-86

The defendant having been adjudged guilty of committing the offenses enumerated below.

IT IS ORDERED that the defendant _____ Clarence  Trotter _____

he is hereby sentenced to the Illinois Department of Corrections as follows:

On 12-22-88 The Honorable Judge Thomas
J. Maloney sentenced the defendant to a term
of life imprisonment without parole on the
offense of Murder and fifteen (15) years on the
offense of Residential Burglary concurrent each
count. Judgment entered on a verdict
Counts 4, 7, 10 and 25 to merge into count 1

| | | Ill. Rev. Stat. | | |
|---|---|---|---|---|
| 1) Murder | Ch. 38 | Sec. 9 | Par. 1-A |
| 3) Residential Burglary | Ch. 38 | Sec. 19 | Par. 3-A |
| | Ch. | Sec. | Par. |
| | Ch. | Sec. | Par. |

IT IS FURTHER ORDERED that the Clerk of the Court shall deliver a copy of this order to the Sheriff of Cook County.

IT IS FURTHER ORDERED that the Sheriff of Cook County shall take the defendant into custody and deliver him to the Illinois ment of Corrections.

IT IS FURTHER ORDERED that the Illinois Department of Corrections shall take the defendant into custody and confine him in the provided by law until the above sentence is fulfilled.

RED BY: _____ S.E. White _____
Deputy Clerk

: _____ 22 Dec 88 _____ BRANCH CT. Rm 606 _____     ENTER: _____ Maloney _____
Judge

## INSTRUCTIONS

CLERK is requested to insert in the appropriate spaces above (1) each sentence and the conditions thereof, including the condition that sence shall run concurrently or consecutively, as the case may be, with other sentences imposed by the court in this case, or other is imposed by courts in other cases; and (2) fill in the following information:

address of counsel for defendant _____

dividual Record No. _____ 456863 _____     Illinois Bureau Identification No. _____ 4569 _____

MORGAN M. FINLEY, CLERK OF THE CIRCUIT COURT OF COOK COUNTY

*In complete
Case Passed
And No copy of
Reappeance.*

STATE OF ILLINOIS  )
                   )  SS.
COUNTY OF COOK     )

        IN THE CIRCUIT COURT OF COOK COUNTY
        MUNICIPAL DEPARTMENT - FIRST DISTRICT


THE PEOPLE OF THE        )
STATE OF ILLINOIS,       )
                         )
     -vs-                )        Branch 66
                         )
CLARENCE TROTTER.        )

*ARRESTED
Aug 10, 1986
without
WARRANT.*

### REPORT OF PROCEEDINGS

        BE IT REMEMBERED that on the 12th day

of August, A.D., 1986, this cause came on for

hearing before the Honorable ROBERT P. BASTONE,

Judge of said court.

*IN police
Station Two
DAYS.*

     APPEARANCES:

          HON. RICHARD M. DALEY,
               State's Attorney of Cook County, by

          MR. PETER VILKELIS,
               Assistant State's Attorney,
               appeared for the People.

bjw

THE CLERK:  Clarence Trotter.

MR. VILKELIS:  Judge, we are seeking -- this is for a Gerstein hearing.  We are seeking probable cause to detain the defendant.

*(handwritten: is?)*

THE COURT:  Has he been charged?

MR. VILKELIS:  He has been charged but he --

THE COURT:  Charges have been approved by State's Attorney Barbaro?  Are you going to file a complaint now?

*(handwritten margin: Police Signed Complaint, to whom?)*

MR. VILKELIS:  You don't have a -- I have a photocopy of the complaint that appears to have been sworn to, Judge.

THE COURT:  Respectfully, unless the original complaint is here I'll enter no order unless Mr. Trotter is actually charged with the offense of murder.

*(handwritten margin: State's Att wants to Sign Complaint)*

MR. VILKELIS:  Judge, I'm prepared to sign this complaint as complainant.

THE COURT:  And be sworn to it?

MR. VILKELIS:  Yes, sir.

THE COURT:  They are not taking him back to the district, he'll be in custody of the Cook County Sheriff at this point and time.

MR. VILKELIS:  Judge, can we pass this matter for a moment?

2

THE COURT:  Mr. Trotter, we'll pass your case and call it again in a few minutes and see what the State wants to do.

(Whereupon, the case was passed.)

(Which were all the proceedings had in the above-entitled matter on the record.)

(Which were all the proceedings had in the above-entitled matter on this date.)

3

STATE OF ILLINOIS      )
                       )      SS:
COUNTY OF COOK         )

I, JERRY D. GIORGI, CSR, Official
Court Reporter of the Circuit Court of Cook
County, County Department-Criminal Division,
do hereby certify that I reported in shorthand
the above proceedings had in the aforementioned
cause, pending in said court on this date; that
I thereafter transcribed into typewriting the
foregoing transcript which I hereby certify is
a true and correct transcript of the proceedings
had in said cause.

Official Court Reporter of
the Circuit Court of Cook
County, County Department-
Criminal Division.

*Copy of Judge Chronis setting No bond/Court appearance.*

STATE OF ILLINOIS    )
                     )   SS.
COUNTY OF COOK       )

IN THE CIRCUIT COURT OF COOK COUNTY
MUNICIPAL DEPARTMENT - FIRST DISTRICT

THE PEOPLE OF THE            )
STATE OF ILLINOIS,           )
                             )
        -vs-                 )        Branch 66
                             )
CLARENCE TROTTER.            )

REPORT OF PROCEEDINGS

BE IT REMEMBERED that on the 13th day

of August, A.D., 1986, this cause came on for

hearing before the Honorable ROBERT P. BASTONE,

Judge of said court.

APPEARANCES:

        HON. RICHARD M. DALEY,
            State's Attorney of Cook County, by

        MR. PETER VILKELIS,
            Assistant State's Attorney,
            appeared for the People;

        MR. JAMES J. DOHERTY,
            Public Defender of Cook County, by

        MR. STEVEN VENIT,
            Assistant Public Defender,
            appeared for the Defendant.

bjw

THE CLERK:  Clarence Trotter.

THE COURT:  Are you Clarence Trotter?

THE DEFENDANT:  Yes.

THE COURT:  Do you have an attorney?

THE DEFENDANT:  He's supposed to be coming down.

THE COURT:  What's his name?

THE DEFENDANT:  Lawrence Williams, William Lawrence, Lawrence.  Laws.

THE COURT:  Mr. Laws?

When did you speak to him last?

THE DEFENDANT:  Two days ago but my sister talked to him yesterday.

THE COURT:  What did she tell you?

THE DEFENDANT:  She told me he was going to come down and see him.

THE COURT:  It's already 12:30.

THE DEFENDANT:  I guess I can deal with a Public Defender until he gets here.

THE COURT:  Is that what you want to do?

*wouldn't waive private Counselor then*

THE DEFENDANT:  Not really.

THE COURT:  We'll wait a few minutes and see if he arrives.

THE DEFENDANT:  All right, thank you.

(Whereupon, the case was passed.)

2

THE CLERK:   Clarence Trotter.

THE COURT:   Your lawyer has not appeared as of yet and I can't afford to wait any longer, given that he is an hour late already.

Mr. Venit is standing to your left, he is an attorney who will be your attorney, sir.

Sir, you are charged with the offense of murder.

The State alleges by complaint here that on July the 20th and 21st, 1986, at 2860 East 76th Street, you killed one Betty Howard by stabbing her and shooting her with a gun, that was during the commission of the offense of burglary and aggravated criminal sexual assault, making this a capital offense, sir, and today is your first court appearance for hearing on this charge.

State ready for hearing?

MR. VILKELIS:   No, Judge, we would be asking that this case be continued, motion State, to 8-19 to link up with two co-defendants, Tillman and Bell.

THE COURT:   Mr. Trotter, it appears as though, sir, two other individuals by the name of Mr. Tillman and Mr. Bell, who are going to be in this courtroom, Thursday afternoon, at 12:00 o'clock, the State

3

wants to continue your case to that same court date

and your case will be joined with their case on

that date for hearing on that charge of murder.

I'll afford the State a continuance

to that date, August 19th.

Is this a capital offense?

MR. VILKELIS:  Yes.

THE COURT:  I'll let the "no bail" order stand *when was Bond set? Copy of Transcript*

as entered by Judge Chronis.

MR. VENIT:  Let the record show that the defendant

answers ready for trial and/or preliminary hearing

and objecting to the State's continuance.

THE COURT:  I'll show you ready today, sir,

and we'll have a hearing on the 19th.

(Whereupon, the above-entitled matter

was continued to 8-19-87.)

4

STATE OF ILLINOIS     )
                            )    SS:
COUNTY OF COOK     )

        I, JERRY D. GIORGI, CSR, Official
Court Reporter of the Circuit Court of Cook
County, County Department-Criminal Division,
do hereby certify that I reported in shorthand
the above proceedings had in the aforementioned
cause, pending in said court on this date; that
I thereafter transcribed into typewriting the
foregoing transcript which I hereby certify is
a true and correct transcript of the proceedings
had in said cause.

                                      Official Court Reporter of
                                    the Circuit Court of Cook
                                    County, County Department-
                                    Criminal Division.

# SUPPLEMENTARY REPORT
CHICAGO POLICE

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

**4. DATE OF ORIG. OCCURRENCE – TIME** 24 July 86    0215

| 1. INCIDENT/OFFENSE CLASSIFICATION LAST PREVIOUS REPORT | MAJOR OFF. CODE | 2. ADDRESS OF ORIG. INCIDENT/OFFENSE ☐1 VERIFIED ☐2 CORRECTED | 3. BEAT OF OCCUR. |
|---|---|---|---|
| Homicide | 0110 | 2816 E. 76th St. | 411 |

| 5. VICTIM'S/SUBJECT'S NAME AS SHOWN ON LAST PREVIOUS REPORT | CORRECT | 6. FIRE RELATED | 7. BEAT ASSIGNED |
|---|---|---|---|
| Howard, Betty | ☒1 YES ☐2 NO | ☐1 YES ☒2 NO | 2131/2133 |

| 8. VICTIM'S/SUBJECT'S ADDRESS | 9. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED | LOCATION CODE |
|---|---|---|
| 2860 E. 76th St. | Unk | |

**10. DESCRIBE PROPERTY IN NARRATIVE** T = TAKEN: R = RECOVERED

FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT

| 1 MONEY | 2 JEWELRY | 3 FURS | 4 CLOTHING | 5 OFFICE EQUIPMENT | 6 TV, RADIO, STEREO | PROPERTY INVENTORY NO(S). |
|---|---|---|---|---|---|---|
| ☐ T $ ☐ R | ☐ T $ ☐ R | ☐ T $ ☐ R | ☐ T $ ☐ R | ☐ T $ ☐ R | ☐ T $ ☐ R | |
| ☐ R | ☐ R | ☐ R | ☐ R | ☐ R | ☐ R | |

| | 11. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 12. HOME ADDRESS | 13. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|---|
| 1 | Harrison, Tracy | Refused | M/1/20 | 507 | 145 | Brn | Blk | Med |
| 2 | Wise, Ronald | 1245 W. Garfield | M/1/20 | 605 | 168 | Brn | Blk | med |

| 14. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 15. NO. ARRESTED | ARREST UNIT NO. |
|---|---|---|---|---|---|---|---|
| OFF.1 7633-889 | | | OFF.2 7633-897 | | | 2 | 021 |

| 16. OFF'S VEHICLE ☐ USED ☒ STOLEN | YEAR 82 | MAKE Ford | BODY STYLE 4dr | COLOR Brn | V.I.N. 1FABP21A6CK139068 | STATE LICENSE NO. NONE | STATE |
|---|---|---|---|---|---|---|---|

**80. NARRATIVE**

THIS IS AN ON-VIEW ARREST BY BEATS 2131 and 2133

On 9Aug 86 at approx. 0455hrs. Beat #2131, P.S. G. Klichowski and P.P.O. Koronkiewicz observed a 1982 Ford Fairmont with no license plates being driven South Bound on Greenwood from Hyde Park. When Beat 2131 Attempted to stop this vehicle it fled, a chased was call in on the radio and the vehicle struck sewer pipe at 55th and Greenwood. At which time two subjects bailed out of the vehicle and fled S/B on Greenwood. Beat 2131 gave a flash message of 2 M/B one wearing dark clothing and the other wearing a white shirt. Beat 2133 P.S. Lange &PPO Foe responding to the call observed the subject wearing the dark clothing running s/b on Greenwood at 55th st. Beat 2133 chased subject to approx 5640 S. Greenwood when he back tracked and with the assistance of Beat 2131 the subject was apprehended at approx. 5521 S. Greenwood. At which time the subject was advised of his constitutional rights per pre-printed form and he stated he understood them.
R/O's returned back to where the vehicle was(55th & Greenwood) and a computer check found that the vehicle was stolen, taken in a homicide.
Offender #1 was driving the wanted vehicle
Beat 2124, PS. Wheeler and P.P.O. Henderson observed the second subject, wearing the white shirt at the bus stop at 55th and Cottage Grove. At which time he was placed under arrest and transported to 021st District for processing.
Vehicle towed as extended hold, hold for investigation
Vehicle relocated to 021 St District and an ET was requested.
Keys were in the vehicle and a knife was recovered from the floor of the vehicle
E.T. Beat 9602
Beat #5214  Inv. Yucaitis #7498 responded
Beat #2120 On Scene

| Court Info: 22 Aug 86,  Br 84-3 | Charges: Pending on Homicide, Charged with Poss of Stolen M/V | ☐ CONTINUED ON OTHER SIDE |
|---|---|---|

| 90. COPIES REQUIRED (NO. & RECIPIENT) Normal | 91. DATE THIS REPORT SUBMITTED – DAY 9 | MO. Aug | YR. 86 | TIME 0930 | 92. SUPERVISOR APPROVING (PRINT NAME) SGT. J. EIGTYEK | STAR NO. 1906 |
|---|---|---|---|---|---|---|

| 93. REPORTING OFFICER (PRINT NAME) J. Koronkiewicz 17783  G. Klichowski 14152 | 94. REPORTING OFFICER (PRINT NAME) Lange #9922  D. Poe #17854 | STAR NO. | SIGNATURE |
|---|---|---|---|

## LIST OF EXHIBIT IN SUPPORT

## (EXHIBIT #1 IS APPENDIX E)

76310

ILLINOIS SUPREME COURT
JULEANN HORNYAK, CLERK
SUPREME COURT BUILDING
SPRINGFIELD, ILL. 62706
(217) 782-2035

February 2, 1994


┌
  State Appellate Defender Chicago
  First Judicial District
  100 W. Randolph St., S#5-500
  Chicago, IL 60601

└


No.   76310 – People State of Illinois, petitioner, v. Clarence
              Trotter, respondent.  Leave to appeal, Appellate
              Court, First District.


      The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.


      The mandate of this Court will issue to the Appellate Court

on February 24, 1994.


Ex. #. 2.

Printed on Recycled Paper

H-317814

EVIDENCE REPORT
CRIME LABORATORY DIVISION/CHICAGO POLICE

| OFFENSE OR INCIDENT | | IUCR | AREA-DIST.-BEAT | DATE RECEIVED | TIM. |
|---|---|---|---|---|---|
| Homicide | | 0 1 1 0 | 02 04 421 | 21 July 86 | 0230 |

| ASSIGNMENT TYPE | | UNIT ASSIGNED | RECEIVED BY | DATE ARRIVED | TIME |
|---|---|---|---|---|---|
| C/S | | 9602 | DeMarco | 21 July 86 | 0300 |

| LOCATION OF SERVICE | REQUESTED BY | DATE COMPLETED | TIME |
|---|---|---|---|
| 2860 E. 76th St. apt.7-C | 5214 | 21 July 86 | |

| VICTIM'S NAME | SEX—RACE—AGE | ADDRESS | PHONE NO. |
|---|---|---|---|
| Betty Howard | F B 42 | 2860 E. 76th St. apt.5-D | |

| ELIM. PRINTS | IN CUSTODY | NAME | D.O.B. | CB NO. | IR NO. |
|---|---|---|---|---|---|
| ☐YES ☐NO | ☐YES ☐NO | | | | |

FINGERPRINTS

| MED | NEG | LIFT | LOCATION FOUND | F.N. | MEQ | NEG | LIFT | LOCATION FOUND | F.N. |
|---|---|---|---|---|---|---|---|---|---|
| B | ✓ 1 | 1 | On bathroom sink apt. 7-C | | W | 8 | | On Orange telephone & receiver | |
| B | 3 | 1 | On dining room door molding apt.7-C | | W | 1 | — | On Broken piece glass | |
| B | 3 | — | On Coca Cola 12 oz. empty can | | W | 1 | — | On broken piece glass 15-4¾ 4 2-3¼ 3¼ 21 July 86 | |

| POSSIBLE SUSPECT INFORMATION | ☐MALE ☐FEMALE | RACE | ☐ADULT ☐JUVENILE | IDENT. SECTION | ⊠SUITABLE ☐NOT SUITABLE | INIT'D | DATE |
|---|---|---|---|---|---|---|---|

PHOTOS TAKEN

| | | |
|---|---|---|
| O/A victim front bedroom fl.apt.7-C | C/U ligature left wrist / C/U ligature right wrist | C/U small white piece of cloth underneath body |
| O/A front bedroom apt. 7-C | C/U ligature behind head / C/U ligature around mouth | C/U White metal chain and charm front bedroom |
| C/U victim front bedroom fl.apt.7-C | C/U chest wound / C/U right shoulder wound | window sill / O/A kitchen |
| C/U I.D. photo / C/U left side of face | C/U two wounds right side of neck | O/A exterior rear kitchen door |

VEHICLES

| YEAR | MAKE & MODEL | COLOR | STATE LICENSE NO. | V.I.N. |
|---|---|---|---|---|
| | | | | |
| YEAR | MAKE & MODEL | COLOR | STATE LICENSE NO. | V.I.N. |
| | | | | |

PHYSICAL EVIDENCE

| PROP. INVENT. NO.—UNIT | | DESCRIPTION & LOCATION | INITIAL DEST. |
|---|---|---|---|
| 309459 | 177 | One pair eyeglasses,plastic toy gun,and white button recovered from front bedroom floor near victim. | E.RPS |
| " | 177 | One white metal chain with sea shell charm recovered from front bedroom window sill. | E&RPS |
| " | 177 | One blue colored earring recovered from front hallway floor next to apt.7-C. | E&RPS |
| 309440 | 177 | One brown paper bag recovered from kitchen counter top. (OVER) | LA |

DETAILS OF CASE

On 21 July 86 at approximately 0215 hrs. above victim found fatally stabbed and beaten.Victim had been tied down to radiator located front bedroom apt.7-C at 2860 E. 76th street.A visual examination of victim revealed chest wound,right shoulder wound,and two wounds right side of neck.The scene was processed for pertinent physical evidence and met with listed results.Vacant apt.was processed for possible ridge impressions and met with listed results.Victim to be fingerprinted, palm printed after autopsy at the medical examiners facility.Arrived at victims apt.located on the 5th floor apt. 5-D at 2860 E. 76th street and processed for pertinent (OVER)

| INVESTIGATING OFFICER'S NAME | STAR NO. | UNIT | BEAT OFFICER'S NAME | STAR NO. | UNIT |
|---|---|---|---|---|---|
| Digran | 14145 | A/2 V/C | J. Garcia | #2150 | 421 |

| REPORTING TECHNICIAN'S NAME | STAR NO. | APPROVING SUPERVISOR'S NAME | STAR NO. |
|---|---|---|---|
| Frank DeMarco | 12802 | Sgt. Leo | 1227 |
| Frank Cascio | 15066 | | |

CPD-33.103 (Rev. 11/85)

Branch                    (Court Date)

(1-82) CCMC1-216

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

The People of the State of Illinois
    Plaintiff

COMPLAINT FOR PRELIMINARY EXAMINATION

v.

NO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Clarence TROTTER
. . . . . . . . . . . . . . . . . . . . . . . . . .
    Defendant

. . . . . . . . . . Betty HOWARD  ( Deceased ) . . . . . . . . . . . . complainant, now appears before
            (Complainant's Name Printed or Typed)

The Circuit Court of Cook County and states that

. . . . . . . . . . . . . . . Clarence TROTTER . . . . . . . . . . . . . . . . . . . . . . . . has, on or about
             (defendant)

20/21 July 1986 . . . . . . . . . . . . . . at 2860 E. 76th St   Apt. 7c . . . . . . Chgo, Cook County
. . . . . . . . . . . . . (date)                                 (place of offense)

committed the offense of . . . . . . . . . . . . . . . . Murder . . . . . . . . . . . . . . . . . . . . . . . in that he

killed Betty Howard without lawful justification by stabbing her with a knife and shooting

her with a hand gun while Clarence Trotter was committing the forcible felonies of . . . . . .

burglary and Aggravated criminal sexual assault. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

in violation of Chapter . . . . . . . . . . . . . . . 38 . . . . . . . . . . . . . . . . . Section . 9-1(a)(3) . . .

ILLINOIS REVISED STATUTES

_(Complainant's Signature)_

STATE OF ILLINOIS    }
             }  ss.
COUNTY OF COOK     }

(Complainant's Address)                    (Telephone No.)

Betty Howard  ( Deceased )
_(Complainant's Name Printed or Typed)_

being first duly sworn, on . . . . . . . . . . . . . . . . . . . . . . . . oath, deposes and says that he has read the foregoing
complaint by him subscribed and that the same is true.

DET. . . . . . . . . . . . . . . . . . . . .
_(Complainant's Signature)_

Subscribed and sworn to before me . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . , 19 86

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(Judge or Clerk)

I have examined the above complaint and the person presenting the same and have heard evidence thereon, and am satisfied that
there is probable cause for filing same.  Leave is given to file said complaint.

Summons issued,
    or          Judge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Warrant Issued,
    or          Bail set at . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Bail set at . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Judge . . . . . . . . . . . . . . . . . . . . .

Judge's No.

## MORGAN M. FINLEY, CLERK OF THE CIRCUIT COURT OF COOK COUNTY

(Municipal)                                                                    District)

People of the State of Illinois                    } No. 86 CR-10969

_Clarence_
                    v.
                    Defendant

_Justice_

ORDER OF SENTENCE AND COMMITMENT TO
ILLINOIS DEPARTMENT OF CORRECTIONS

Defendant having been adjudged guilty of committing the offense enumerated below,

IT IS ORDERED that the defendant _Clarence Justice_
hereby committed to the Illinois Department of Corrections as follows:

_sentenced Counts 1 M he sen-_
_tenced to the def State Natural Life_
_on Counts (1) & (2). He then Fifteen (15) years_
_on Aggra. Kidnapping Count (14)_
_and Fifteen (15) years for Res._
_Burglary Count (16). All counts_
_to run concurrent. Mitt. to issue_

|                          | Ill. Rev. Stat. |
|--------------------------|-----------------|
| _Murder_                 | Ch. 38 - 9 Sec. 1 - A (1) |
| _Murder_                 | Ch. 38 - 9 Sec. 1 - A (2) |
| _Aggr. Kidnapping_       | Ch. 38 - 10d - a (3) |
| _Res. Burglary_          | Ch. 38   Sec. 19   Par. 3 |

IT IS FURTHER ORDERED that the Clerk of the Court shall deliver a copy of this order to the Sheriff of Cook County.

IT IS FURTHER ORDERED that the Sheriff of Cook County shall take the defendant into custody and deliver him to the Illinois ment of Corrections.

IT IS FURTHER ORDERED that the Illinois Department of Corrections shall take the defendant into custody and confine him in the

PREPARED BY: _H.K._                                   Deputy Clerk

DATED: _10/26/89_  BRANCH CT. _26_   ENTER: _Judge_ _Vincent Michael Gaughan_ CODE # _155_

_Prem 202_                 INSTRUCTIONS    _V. M. GAUGHAN 155-_

CLERK is requested to insert in the appropriate spaces above (1) each sentence and the conditions thereof, including the condition that sentence that run concurrently or consecutively, as the case may be, with other sentences imposed by the court in this case, or other that imposed by courts in other cases; and (2) fill in the following information:

State Individual Record No. _456863_                   Illinois Bureau Identification No. _____

CLERK OF THE CIRCUIT COURT

FILED

AUG 1 8 1994

AURELIA PUCINSKI
CLERK OF CIRCUIT COURT

STATE OF ILLINOIS )
              ) SAS
COUNTY OF COOK    )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS   )
                               )
        -vs-              )   No.  86-CR-10969
                               )
CLARENCE TROTTER           )

## MOTION FOR JUDGMENT OF ACQUITTAL OR, ALTERNATIVELY, MOTION FOR A NEW TRIAL

Now comes the defendant, CLARENCE TROTTER, by his attorney, RITA A. FRY, Public Defender of Cook County, through MARY J. DANAHY and JEAN HERIGODT, Assistant Public Defenders and after a finding of guilty and before sentencing and respectfully moves this Honorable Court to set aside the finding of guilty in the above-entitled cause and grant him a new trial, it being expressly understood that defense counsel has not yet been furnished with an official transcript of the trial and makes this motion on behalf of her client, without prejudice to or waiving the later discovery of error in the trial record.

In support thereof, defendant states as follows:

1.    The Court erred in granting the prosecution's pre-trial motion in limine to bar the introduction of former co-defendant Steven Bell's confession.  The Court ruled that because Mr. Bell was acquitted at a bench trial, Judge Gillis had obviously found his statement unreliable.

Both Mr. Bell's and Mr. Tillman's confessions were introduced by the defense, over objection, at Mr. Trotter's

first trial, pursuant to <u>People v. Kokoraleis</u>, 149 Ill.App.3d
1000, 103 Ill.Dec. 186, 501 N.E.2d 207 (1986).  Mr. Trotter's
first trial was held subsequent to Mr. Bell's acquittal.

2.    The Court erred in denying pre-trial the defendant's
motion to dismiss based upon the Speedy Trial Act.

3.    The State failed to prove defendant guilty beyond a
reasonable doubt, as follows:

A.    The prosecution failed miserably to prove any
connection between this defendant and the
co-defendants, who had previously confessed to
committing this crime together.  That confession did
not mention any third party, let alone Mr. Trotter.

Furthermore, the prosecution presented evidence that
Mr. Trotter had never been seen in the building where
Michael Tillman lived, supporting an inference that
Mr. Trotter did not know Mr. Tillman.

B.    Mr. Trotter's fingerprint was found on an empty
Coca-cola can found in the kitchen of vacant
apartment 7C, the apartment where Mrs. Howard's body
was found in a closed bedroom.  It cannot be said how
long this print was on the can or where the can was
when the print was placed there.  What is known is
that the can, which was found by the police in the
early morning hours of July 21, 1986, was still damp
with condensation, undisputably indicating recency.

Mrs. Howard was missing Saturday night, July 19,
1986, when she failed to appear at her friend, Betty
Brandon's house for a barbeque and when she failed to
take her young son, Myron, to her elder son, Eddie's
house for baby-sitting.  A still damp pop can found
some approximately 30 hours after Mrs. Howard was
most likely abducted utterly fails to connect
Mr. Trotter to this crime.

Unless it can be shown that the defendant's
fingerprint found at a crime scene could have been
impressed only at the time the crime was committed,
such print is insufficient evidence of guilt.
<u>People v. Ware</u>, 82 Ill.App.3d 297, 37 Ill.Dec. 760,
402 N.E.2d 762, (1980).  Here, the pop can is found
in the kitchen of a vacant apartment, not at the
crime scene (closed bedroom) itself.  And although
there is no way to determine how long the print had
been on the can or where the can was physically

located when the print was placed on the can, it is
clear that the can had not been in the apartment
long, certainly left many hours after Mrs. Howard's
death, as indicated by the condensation still present
on the can.

C.   Mr. Trotter was arrested August 10, 1986.  At that
time he had in his possession certain electronic
equipment identified as belonging to Mrs. Howard.
This most certainly does not qualify as recent
possession.

Boris "Ashay" Flowers, who himself was caught with
personal possessions identified as belonging to the
victim, as well as the murder weapon, conveniently
claimed to have received these items from Mr. Trotter
in the evening hours of July 20, 1986, approximately
24 hours after Mrs. Howard failed to appear at either
her girlfriend's or her son's house.  Ashay, who at
that time was a general in the disciples street gang,
told the police Mr. Trotter told him he had just
bought "all this stuff" for $300.00.  Thus, even if
Ashay's testimony were believed, the possession by
Mr. Trotter was neither unexplained nor sufficiently
recent to indicate any guilt.  Unexplained recent
possession of proceeds is not sufficient to sustain
the charge of burglary, and certainly should not be
sufficient to prove murder.  People v. Ross, 103,
Ill.App.3d 883, 59 Ill.Dec. 531, 431 N.E.2d 1288
(1981).

Additionally, Linda Spates testified (consistent with
her offer of proof presented in lieu of her barred
testimony at Mr. Trotter's first trial) that she had
been present at Mr. Trotter's house when Ashay came
to collect money for the items belonging to the
victim which had been previously sold to Mr. Trotter
by Ashay.  Ms. Spates' testimony was much more
credible than the testimony of Ashay, who was
literally caught holding the proverbial "hot potato".

D.   Michael Tillman and Steven Bell confessed to
committing this murder together.  Neither mentioned
any third party, let alone Mr. Trotter.  Mr.
Tillman, prior to owning up to his actions,
initially indicated that his brother, Kenneth
Tillman, and Steven Bell committed this crime;
thus, Mr. Tillman certainly would have mentioned
any additional offenders.  Also, Mr. Tillman's
confession was corroborated by a great deal of
physical evidence.

Mr. Tillman, a janitor in the building with access to
certain apartments, had certain guilty knowledge

which he exhibited prior to his confession:  he
yelled out to the Howard family "there's your mama"
as the police entered apartment 7C, before he could
possibly have seen Mrs. Howard's body in the closed
bedroom of the unlit apartment; and he knew Mrs.
Howard had been shot when the police believed she had
only been stabbed.

Michael Tillman had a certain gang tattoo on his
body, indicating membership in the disciples street
gang, coincidentally the same gang in which both
Ashay and Charles "Dodo" Coker testified that Ashay
held the rank of "don" or "general".  Mr. Trotter was
never connected to any street gang.  Furthermore, no
connection was ever established linking Mr. Trotter
to either Mr. Tillman or Mr. Bell, each of whom were
many years younger than Mr. Trotter.  In fact, the
prosecution introduced evidence that Mr. Trotter had
never been seen in the building where both Mr.
Tillman and Mrs. Howard resided, supporting the
defense contention that these men did not know each
other.

All of the evidence surrounding the confessions of
Tillman and Bell most certainly amount to a
reasonable doubt as to any guilt on the part of Mr.
Trotter.

E.   The prosecution has totally failed to prove by any
evidence at all what Mr. Trotter's role was in this
crime.  They have been unable to prove whether he was
a principal or accountable, a look-out or an
on-looker.  They have not proven that he shot Mrs.
Howard, nor stabbed her; they have not proven that he
was ever in her apartment, nor in the room where she
was killed.  They have not proven that he was ever
even in the same room with either Mrs. Howard or her
son, Myron.  The State argued that Mr. Trotter was a
principal, but if not a principal, then was
accountable.  They were unable to provide one
cintilla of evidence to show any actions committed by
Mr. Trotter against the Howards, thus failing to
establish any nexus between Mr. Trotter and this
crime.

4.   The finding is against the weight of the evidence.

(See above #3)

5.   The State failed to prove every material allegation

of the offense beyond a reasonable doubt.   (See above #3)

6.  The court erred in overruling portions of the defendant's motion for a directed finding at the close of the State's case.

7.  The Assistant State's Attorney made speculative arguments, not based on the evidence, repeatedly throughout closing argument.

8.  The finding is based upon evidentiary facts which do not exclude every reasonable hypothesis consistent with the innocence of the defendant.  (See above #3)

9.  Boris "Ashay" Flowers was improperly allowed to testify that a "hot" gun meant that it had been used in a murder, when the common (slang) definition means "stolen".

10.  The Court erred in cutting short an area of cross-examination of witness Boris "Ashay" Flowers.

**WHEREFORE**, for the various reasons urged before and during the trial, and every error as may appear from the official transcript of proceedings, defendant requests this Honorable Court enter a judgment of acquittal or, alternatively, grant Mr. Trotter a new trial.

Respectfully submitted,

RITA A. FRY
Public Defender of Cook County


BY:   MARY J. DANAHY
Assistant Public Defender   30295


BY:   JEAN HERIGODT
Assistant Public Defender   30295

STATE OF ILLINOIS )
                  ) SS
COUNTY OF COOK    )

FILED

AUG 27 1987

MORGAN M. FINLEY
CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
                                )
        —vs—                    )    No. 86-10969
                                )
    CLARENCE TROTTER            )
                                )

MOTION TO DISMISS INDICTMENT
BASED UPON COLLATERAL ESTOPPEL

Now comes the defendant, CLARENCE TROTTER, by and through his attorney,

PAUL P. BIEBEL, Acting Public Defender of Cook County, through his assistant,

MARY J. DANAHY, and moves this Honorable Court dismiss the indictment pending

against defendant.

In support thereof, the following is submitted:

1.  The defendant was charged with murder, along with co-defendants

Michael Tillman and Steven Bell.  Michael Tillman and Steven Bell were tried

simultaneously before this Court in bench trials.  Mr. Tillman was found guilty

and Mr. Bell was acquitted;

2.  At the trials of the co-defendants, the State proceeded on the theory

that Mr. Tillman and Mr. Bell committed the murder together.  The State intro-

duced evidence that both co-defendants made inter-locking oral statements

admitting his participation in the murder, as well as implicating the other.

Neither Mr. Tillman's nor Mr. Bell's statement named Clarence Trotter or in-

dicated participation by any third party;

3.  The State did not argue nor did it introduce evidence at the trials

of Mr. Tillman and Mr. Bell which implicated this defendant in the crime;

4.  At the earlier trials of the co-defendants, defense counsel for each

co-defendant attempted to "point the finger" at this defendant in their respective

-2-

closing arguments.  Assistant State's Attorney Lawrence Lykowski did not

attempt to counter co-defendants' counsels' arguments (nor could he with any

credibility) when he argued as follows:

> "Mr. O'Neal says we have nothing about Clarence Trotter
> on this case.  We stood ready to go on this trial.  The
> Clarence Trotter case, I don't have to mention it.  He
> will ask for the continuance.  He will get his trial."
> Trial Transcript of December 18, 1986 at page 132.

5.  Assistant State's Attorney stated the State's theory in connection

with this crime when he argued in closing rebuttal at the co-defendants' trials:

> "Two people did it.  (Emphasis added.)  Michael Tillman
> tells you who did it.  He says I did it and Steven Bell
> did it.  Steven Bell says he did it and Michael Tillman
> did it.  I don't have to speculate on what one person
> might have done.  I have evidence to show that two people
> did it, Judge."  (Emphasis added.)

6.  The State is now proceeding against this defendant for the same murder

for which Mr. Tillman and Mr. Bell have already been tried.  The State, in pro-

secuting this defendant, is proceeding upon a theory totally contradictory to

the theory and evidence presented in the trials of the co-defendants.  To allow

the State to now prosecute this defendant necessarily requires the State to

present a theory and evidence inconsistent and incompatible with the former

trial.  It is the defendant's position that the State should be precluded from

having "two bites of the apple" and should be barred based upon collateral

estoppel;

7.  To allow the State to now procede against this defendant violates

Due Process and Double Jeopardy and is fundamentally unfair and the State should

be barred by collateral estoppel.

WHEREFORE, the defendant prays this Honorable Court dismiss the indictment

pending against him and bar the State from prosecuting, based upon collateral

estoppel.

-3-

Respectfully submitted,


BY:  MARY J. DANAHY
Assistant Public Defender

STATE OF ILLINOIS      )
                       ) SS
COUNTY OF COOK         )

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS   )
                                  )
              -vs-                )   Indictment No. 86-10969
                                  )
CLARENCE TROTTER                  )
                                  )

## MOTION FOR NEW TRIAL BASED UPON
## NEWLY DISCOVERED EVIDENCE

Now comes the defendant, CLARENCE TROTTER, by and through
his attorney, RANDOLPH N. STONE, Public Defender of Cook County,
through his assistants, MARY J. DANAHY and AHMED PATEL, and moves
this Honorable Court to grant defendant a new trial based upon
newly discovered evidence.

In support thereof the following is submitted:

1.    That defendant was found guilty on November 18, 1988.
The Sun-Times reported this the following day.  The jury returned
a verdict of no-death on November 21, 1988.  This event was
reported in the Sun-Times the following day.

2.    That Darrell Tarr, an attorney in the Public Defender's
Post-Conviction unit, read these articles and contacted one of
defendant's attorneys, Ahmed Patel, with certain information
pertaining to defendant's case, which was unknown to defendant
and his attorneys at the time of trial.

3.    Mr. Patel referred Mr. Tarr to attorney Mary Danahy.

4.    Mr. Tarr's information consisted of the following:
that at the time of Betty Howard's death, Mr. Tarr was not yet an
attorney and had responsibilities as an overseer of the building

at 2860 East 76th Street, Chicago, Illinois, where Ms. Howard
lived and was killed.  The day following Ms. Howard's death, Mr.
Tarr went to said building in connection with his
responsibilities as manager.  He went to apartment 7-C that day
and apartment 5-D sometime later.  He noticed some blood
droplets in apartment 5-D.  There was more blood droplets as well
as droplets and smears in the elevator.  Blood droplets continued
in the hallway on the 7th floor and into apartment 7-C to where
the body was found.  Mr. Tarr recalls this because he cleaned up
at least some of the blood stains.

    5.  Although Darrell Tarr was named in the police reports
as manager of the building, neither the above information nor any
other information of obvious import was included or attributed to
Mr. Tarr.  Mr. Tarr gave no statement to the police.

    6.  No where do the police reports refer to these blood
stains.  They were not photographed, nor were samples sent to
the crime laboratory.  Therefore, it seems logical that these
stains were overlooked by the police.

    7.  Mr. Tarr has never worked with defendant's attorneys in
the past and was unaware that defendant's attorneys were involved
in this matter.

    8.  This information may have changed the outcome of
defendant's trial, if known at the time because the jury may have
believed these blood stains to be a trail of blood from the
victim left as she was taken from 5-D to 7-C.  This would of
course mean at least some of her injuries were inflicted in 5-D,
thus corroborating the confessions of Tillman and Bell who said

they raped Ms. Howard in 5-D and then brought her to 7-C.  It is possible the jury would then have believed defendant's statement which said that he arrived at apartment 7-C only after Ms. Howard was dead.

**WHEREFORE**, defendant prays this Honorable Court grant defendant a new trial based upon the above cited newly discovered evidence.

Respectfully submitted,

RANDOLPH N. STONE
Public Defender of Cook County


BY:  MARY J. DANAHY
Assistant Public Defender 30295


BY:  AHMED PATEL
Assistant Public Defender 30295

STATE OF ILLINOIS    )
                      ) SS
COUNTY OF COOK      )

## IN THE CIRCUIT COURT OF COOK COUNTY
## CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS   )
                                 )
             -vs-             ) Indictment No. 86-10969
                                 )
CLARENCE TROTTER            )
                                 )

## AFFIDAVIT IN SUPPORT OF CERTAIN MATTERS ALLEGED
## IN DEFENDANT'S MOTION FOR NEW TRIAL BASED
## UPON NEWLY DISCOVERED EVIDENCE

DARRELL TARR, being first duly sworn, deposes and states as follows:

1.   I am an attorney licensed to practice in the State of Illinois since November, 1986.  I am currently employed by the Office of the Cook County Public Defender in the Post-Conviction unit and have been so employed since September, 1987.

2.   In July of 1986 I was overseer of a residential building located at 2860 East 76th Street, Chicago, Illinois under a bankruptcy receivership.

3.   On July 21, 1986 I learned of the murder of one of the tenants, Ms. Betty Howard.  Ms. Howard lived in apartment 5-D and was found dead in apartment 7-C.  On that date I went to apartment 7-C and some time after, went to 5-D.

4.   In apartment 5-D I noticed dark stains and blood droplets on the floor in the living room.

5.   I noticed blood droplets in the 5th floor hallway outside apartment 5-D.

6.   I saw a great deal of blood, both smears and drops, in

the elevator.

7.   I observed blood droplets in the 7th floor hallway outside apartment 7-C.

8.   The blood stains continued from the hallway to the bedroom where the body was found.  There was a great deal of blood in this room, coagulated to approximately 1/4 inch thick.

9.   I cleaned up the blood in apartment 7-C.  I do not recall if I cleaned up the other stains.

10.  I read about Mr. Trotter's case in the Sun-Times subsequent to his trial.  I then contacted attorney Ahmed Patel. I told him the above information.  Mr. Patel asked me to talk to attorney Mary Danahy, which I did.  I had never worked directly with either of these attorneys previously and did not know they represented Mr. Trotter.

11.  All of the above information is to the very best of my recollection.


FURTHER AFFIANT SAYETH NOT.

**SUBSCRIBED** and **SWORN** to before me

this _____ day of _____, 1988.

_____
Notary Public